Alfred Lirette died on September 23, 1940, in the Parish of Terrebonne, wherein he resided. On September 27, 1940, Bagley C. Lirette, a brother, filed a petition alleging the death of the deceased, setting forth the heirs of the decedent, and praying to be appointed administrator of his estate.
On October 1st, 1940, Caliste J. Duplantis filed a petition in the said succession alleging that the decedent had left a will in olographic form, dated May 23, 1940, filing the purported will, and praying that the will be admitted to probate, registered and executed.
The alleged will read as follows:
"I Alfred J. Lirette of the Parish of Terrebonne Louisiana do make and ordain this my last will and testament revoking all others.
"I gave and bequeath to Caliste J. Duplantis and wife Lottie nee Belenger Duplantis
"I name and appoint Caliste J. Duplantis executor of this my last will and testament with full seizin and without bond. This written dated and signed with my own hand at Terrebonne, Parish of Terrebonne Louisiana this month May twenty Third 1940.
"Alfred J. Lirette"
On the same day, Bagley C. Lirette and Alex A. Lirette, brothers of the deceased, filed a motion to have the will filed in the clerk's office for inspection and to have a day fixed for its probation and for notification of the presumptive heirs. An order pursuant to said motion was duly signed by the District Judge, fixing October 12, 1940, as the day for hearing.
On October 10, 1940, Bagley C. Lirette and Alex. Lirette filed an opposition to the probate of the alleged will on the grounds that it was not a genuine will, since it was not entirely written, dated and signed by the testator and since it made no disposition of property.
On the day set for the probate of the will, the opponents requested that the proponent of the will be required to produce proof of the execution of the will before they be required to produce evidence attacking the same. The court overruled this request and held that the opponents were required to produce their evidence attacking the will as they bore the burden of showing that the will was not genuine, to which ruling opponents excepted and reserved a bill of exception. Under reservation, the hearing was had. There was judgment dismissing the opposition. Opponents have appealed.
Opponents contend that the lower court erred in ruling that they carried the burden of proof and ordering them to proceed in the introduction of their evidence.
Relative to this question, we are of the opinion that where a will has been probated as required by law, the probating of the same makes prima facia proof of its genuineness; if the will is thereafter attacked, the burden of proof rests upon the opponent to prove its invalidity. But a different rule applies when the probate of the will is opposed ab initio, the rule then being that it is incumbent upon the proponent of the will to produce proof of its execution and its genuineness and/or its validity. The rule of evidence in such a case is governed by Civil Code, Article 2245, and Code of Practice, Article 325, rather than Civil Code, Article 1655, in the former. This distinction is made clear in the cases of Succession of Gaines, 38 La.Ann. 123; Succession of White, 132 La. 890, 61 So. 860; Succession of Wadsworth, 152 La. 131, 92 So. 760.
We are, therefore of the opinion that the district judge committed error in requiring the opponents to go forward with their proof attacking the will, but we are of the further opinion that this error is not of any importance in this case, due to the conclusion we have reached and which will hereafter be discussed.
On the question of the genuineness of the will, the proponents of the will offered the testimony of Mr. Caliste J. Duplantis, his son and his daughter-in-law. Mr. Duplantis and his daughter-in-law testified that they were present at the time of the writing of the will, the will having been written at the home of Duplantis, from a form obtained by Duplantis and furnished decedent; that they saw, intermittently, the deceased in the writing of the will and that the will was entirely written, dated and signed by the decedent. Victor Duplantis, the son of Caliste J. Duplantis, testified that he knew the signature of the decedent, having seen him sign his name a few times and that he recognized the signature of decedent on several documents as being genuine. He identifies the will as being entirely written, dated and signed by decedent. The proponent also offered as a witness Hon. J. Louis Watkins, a practicing attorney of Houma, who testified that Mr. Caliste J. *Page 199 
Duplantis, in the spring of 1940, called at his office for information as to the making of a will; that he drew up a rough form of an olographic will without containing any specific condition, advising him that the will had to be written, dated and signed by the testator, it being only a shell of a will. Pursuant to the direction of the presiding judge, this purported form or shell of a will was thereafter filed in evidence. Opponents offered four documents upon which appears the signature of the deceased and which signatures are acknowledged to be the genuine signature of the deceased.
The proof offered by the opponents consists of the testimony of the two brothers of the deceased who testified that they are familiar with the handwriting of their deceased brother, and that the purported will is not in his handwriting. They point out certain differences which they claim show the will to be a forgery and not in the handwriting of the deceased. They likewise offered certain documents admittedly in the handwriting of the deceased for use in comparing the signature on them with the handwriting on the will. They also produced Hon. R.A. Bazet, the Clerk of the District Court, in the nature of an expert, who expressed an opinion, by comparing the signatures on the documents offered admittedly containing the genuine signature of the deceased with that on the will, that there were differences in the handwriting. However, he would not undertake to say positively that the will had not been written by the deceased; he also admitted that the signature and handwriting of a person often varies, depending on his physical condition, age and other circumstances.
A question of fact is presented herein. The trial judge came to the conclusion that the will was entirely written, dated and signed by the deceased. He must have attached considerable weight to the testimony of Mr. Caliste Duplantis and his daughter-in-law, even though Mr. Duplantis was interested in the will as a beneficiary thereunder. We see no reason to disagree with him and hold that these two witnesses committed perjury in the giving of their testimony. While there is some slight variation in their testimony in the details concerning the pen the decedent used and the position he occupied while writing the document, yet these variations are of no great importance more than to show the natural results of the different ways that witnesses see or understand that which is being done. Duplantis might have encouraged the deceased to make the will in his favor; in fact, he obtained the form for him to use and made it convenient to write the will. That in itself is not sufficient to cast doubt on the testimony of Duplantis and his daughter-in-law to the effect that they actually saw deceased write the will in question.
Furthermore, we find so much similarity in the handwriting in the will and that of the genuine signature of the testator on the documents filed in evidence that we are of the opinion that the testator wrote the will in his own handwriting. While there are certain differences in some respects, yet it is well known, as testified by Mr. Bazet, that a person does not always write exactly the same. His signature and handwriting will sometimes be slightly different over a period of time, and there will often be a difference on account of his physical condition, infirmity, feebleness, nervousness, or the kind of pen and ink which he uses, as well as the position he is in when writing.
We have given due weight to all of the facts found in the record, including the testimony of the opponents which was in the nature of negative testimony as against the testimony of proponent and his daughter-in-law which, as stated before, was positive as having seen the decedent write the will in his own handwriting. We are therefore of the opinion that the trial judge made a correct finding of fact that the will was genuine, regardless of his illegal ruling, presumptions and several errors made in commenting on the testimony. We feel that these errors were made by him due to the fact that the evidence had not been transcribed, through no fault of his, when he wrote the decision.
As to opponents' contention that the will makes no disposition of property, it is our opinion that the will is at least valid for the appointment of an executor of decedent's estate rather than an administrator, the decedent having died testate. The trial judge so held and dismissed the opposition but did not order the probate and execution of the will, leaving such matters for future proceedings in accordance with law. We refrain, however, to pass upon the validity of the will relative to the disposition of any property, the district judge having failed to do so. We are called upon only to pass on such questions as may have *Page 200 
been determined by the lower court. If and when the will is probated and its execution ordered, the heirs then will have the right to question whether or not the testator made a disposition of his property to Mr. and Mrs. Duplantis.
Judgment affirmed.