FRUGE, Justice ad hoc.
 

 This is an appeal by plaintiffs from a judgment dismissing their attack on the codicil of the will of Alida Prejean, deceased. The will, which was executed in the form of a nuncupative will by Public Act, contained certain special bequests and' appointed- her. .son,: Odea Boudoin, as her executor.’...The codicil;-also- in-the .form of. nuncupative by Public Act, was executed to appoint the defendant herein, A. J. Thomas, as her executor in lieu of her son, Odea Boudoin, who predeceased her.
 

 Plaintiffs’ attack on the codicil is grounded mainly on five points:
 

 1. That said codicil was executed as the result of undue influence on the part of others;
 

 2. That the decedent lacked testamentary capacity to make said codicil ;
 

 3. That at the execution of said codicil the witnesses thereto were not present and the codicil was not executed in the presence of the testatrix;
 

 4. That the codicil was not written by the Notary Public at the dictation of the testatrix; and
 

 5. That the testatrix was too illiterate to use the language in which the codicil was written.
 

 The district court rendered judgment in favor of defendant, rejecting plaintiffs’ demands in full. Plaintiffs, on this appeal;, re-urge all five grounds of attack. We will discuss them in the order listed above.
 

 1. We find no merit in plaintiffs’' contention of undue influence. It is expressly provided by Article 1492 of the LS A-Civil Code that proof is not admitted to attack a will on the grounds that it was executed through hatred, anger, suggestion or captation. This .same contention, of..undue
 
 *926
 
 influence was held to be without merit in the case of the Succession of Yeates, 213 La. 541, 551, 35 So.2d 210, 213, wherein this Court said:
 

 “The contention that the will was executed under duress and undue influence exerted on the part of its pro! ponent is also without merit, for ‘Proof is not admitted of the dispositions having been made through hatred, anger, suggestion or captation.’ ”
 

 2. Equally without merit is plaintiffs’ contention that the decedent lacked testamentary capacity.
 

 In the Succession of Edgar, 184 La. 775, 167 So. 438, it was held that testamentary capacity is presumed and the person attacking a will has the burden of showing lack of such capacity when the will was executed. :
 

 A careful study of the evidence in the record does not show that Alida Prejean lacked testamentary capacity. While it is true that she was an old person of eighty-two years of age and suffering from arteriosclerosis, high blood pressure and hypertension, there is no evidence that she did not know what she was doing. She was not mentally deranged and we are convinced that she understood the terms of said codicil. Dr. Ardley Hebert who visited her for the first time about one week after the-codicil in question was written stated that-even though she had had a heart attack during the interval between the time that she wrote the codicil and the time of his visit that the decedent nevertheless was not disoriented and that she recognized people and talked to them. We conclude that the testimony on this issue affirmatively shows that the decedent was fully capable-of appointing an executor for her will; that there was nothing wrong with her mentally and that her only trouble was a natural condition resulting from old age and the ailments which usually accompany old age.
 

 Pertinent here is the case of Rostrup v. Succession of Spicer, 183 La. 1087, 1096, 165 So. 307, 310. In that case a decedent’s will was being attacked on the ground-that she,lacked testamentary capacity. -The doctor who attended her testified that she had the mind of a ten year old child but that she was not insane. It was his further testimony that she was suffering from heart and kidney trouble and marked arteriosclerosis. She was likewise an old person of eighty years of age. The Court, in upholding the testamentary capacity of said decedent, stated:
 

 “We have carefully read all the testimony and concur in the conclusions, reached by the trial judge that the testatrix knew and realized perfectly what she was doing when she made her will. The best answer to opponent’s attack on the will is the testimony of the five-witnesses who were present when the will was made, the physician. who attended her just before and just after the date of the will, and the minister
 
 *928
 
 who visited her during, her last illness. These all say that, although her mental faculties may have been somewhat weakened, she understood perfectly what ■ she was doing and what was going on about her. We are convinced, as was the trial judge, that she had sufficient mental capacity at the time to realize what she had and what she: wanted to do with it. That is the true test.” ■,
 

 In the .recent case-of McCarty v. Trichel, 217 La. 444, 454, 46 So.2d 621, 624, this Court .stated:
 

 “Multiple: cases have reached this Court involving the question of testamentary capacity and it has been in rare instances only — where the evidence of insanity was positive and overwhelming — that the wills were an- . nulled and voided. Our court has consistently held that medical testimony unsupported by concrete factual evidence of insanity actually affecting the execution of a will is insufficient. This is' particularly true where the medical evidence is conflicting. Interdiction of Escat, 206 La. 207, 19 So.2d 96; Chandler v. Barrett, 21 La.Ann. 58, 99 Am. Dec. 701; Kingsbury v. Whitaker, 32 La.Ann. 1055, 36 Am.Rep. 278; Godden v. Burke, supra [35 La.Ann. 160]; Succession of Bey, 46 La.Ann. 773, 15 So. 297, 24 L.R.A. 577; Succession of Jacobs, 109 La. 1012, 34 So. 59.
 

 “In the iftstant case, we have observed that there is no evidence that this testatrix was ever insane or incompetent or that interdiction proceedings were ever applied for; and the true test in all such cases as this is whether, at the time of the making of the will, the testatrix was of sufficient mind to understand the nature of the testamenT tary acts and appreciate their effect.”
 

 3. Plaintiffs’ next contention is that the witnesses and the testatrix were not present at the time the codicil in question was executed. The codicil shows that it was prepared by Mr. F. J. Samson as notary public in the presence of the- witnesses, A. D. LeBlanc, J. G. Simon and Jules J. Broussard. Of these Mr. -.Jules J. Broussard is the only one who- testi-fied at the trial and his testimony in substance is that the codicil was executed by the decedent in the presence of F. J. Samson, notary, and in the presence of the witnesses, A. D. Le-Blanc, J. G. Simon and himself; that nobody else was present and that all proceedings as well as the signature of the codicil were carried on by the testatrix, the notary public and the witnesses in the presence of each other.
 

 In the case of Renfrow v. McCain, 185 La. 135, 168 So. 753, this Court reaffirmed its well settled and expressed jurisprudence to the effect that a nuncupative will is proof of itself and that a nuncupative will by Public Act must be considered
 
 *930
 
 as proved until disproved. Article 1647, LSA-Civil Code.
 

 Plaintiffs therefore had the burden of proving that the codicil in question was not executed in the presence of the witnesses and notary public. We find that they have failed to carry this burden of proof.
 

 4. In support of plaintiffs’ contention that the codicil was not written by the notary public at the dictation of the testatrix, they offered the testimony of Mrs. Deley LeBlanc to the effect that when Mr. Samson, .the notary, came to the decedent’s house with some other man they only remained ten or fifteen minutes and that they did not have a typewriter, with them. The witness Jules J. Broussard testified that while he did not remember whether the codicil in question was written with a typewriter or. pen. that he ■ had no doubt in his mind that the codicil was actually written by the notary, public as it was being dictated by the testatrix and- in the presence of the ■subscribing witnesses. The trial judge evidently resolved this conflict in favor of defendant, for the reason that Mr. Jules J. Broussard was the only witness to the execution of. the codicil who testified on the trial and we fail to see where he has committed any manifest error.
 

 5. We likewise find no merit to'the contention that the decedent was too illiterate to use the language in which the codicil was written. The testimony of the plaintiffs show that they were of the opinion that decedent was capable of appointing an executor to her will but they seriously ;questioned her ability to dictate such an appointment in the language which was used by the notary. See Succession of Purkert, 184 La. 792, 167 So. 444, and cases cited therein. It was held that it was within the province of the notary public, in writing a nuncupative will, as dictated by the testator, to suggest the most appropriate phrases in- which to convey precisely the intention expressed by the testator. For instance, in the case of Renfrow v. McCain, supra, this Court employed the following pertinent language :
 

 ■ “ * * * And it is the well-settled jurisprudence of this state that the mere fact that a nuncupative will by public act contains words which were not dictated by the testator will not affect the validity, when it is shown that the notary lucidly expressed the testator’s intentions, and that he faithfully recorded those intentions in the will.” ■
 

 Also pertinent here is the expresr sion of this Court in the case of Rostrup v. Succession of Spicer, 183 La. 1087, 1092, 165 So. 307, 308, wherein it was said:
 

 “But it is argued that the will was not written by the notary ‘as dictated’ by the testatrix. The point urged is that the will as written by the notary is not couched in the exact language used by the testatrix; that there are some words used in the will not used by
 
 *932
 
 the- testatrix in dictating' her desires- and intentions to the. notary.- That seems to be conceded. Even" so, the - will is not void for that reason. Article 1578 of the Code says that nuncupative testaments by public act must be dictated by the testator and 'written by the notary as it is dictated.’- But this does not mean that the notary must, in his draft of the will, use the exact words, the identical verbiage which fell from the lips of the testator in-dictating the will. It is
 
 ‘identity of thoughts and not of words which the law requires
 
 Hamilton v. Hamilton, 6 Mart., N.S., 143; Starrs v. Mason, 32 La.Ann. 8; Landry v. Tomatis, 32 La.Ann. 113; Succession of Cauvien, 46 La.Ann. 1412, 16 So. 309; Hennessey’s Heirs v. Woulfe, 49 La.Ann. 1376, 22 So. 394.” (Emphasis ours.)
 

 It is well to note that the only important thing to be accomplished by the testator in this codicil was to appoint her grand-son-in-law, A. J. Thomas, as executor for her ■estate in place of her son, Odea Boudoin, who predeceased her.
 

 Mr. Jules Broussard testified that the decedent in dictating her codicil to the Notary Public used the words: “pour remplacer mon fils, Odea” and that the testator further told the notary public in French “I want to appoint him in place of my son Odea”. It therefore conclusively appears that there was identity of thought between- the- testatrix in expressing her wishes and the notary public in writing her wishes in the codicil.
 

 For the reasons assigned the judgment of the District Court is hereby affirmed. Costs to be. paid by the plaintiffs..