LE BLANC, Justice.
Mrs. Lilly Young Koerkel, surviving widow of Otto H. Koerkel, instituted this proceeding to have herself recognized as widow in community of her deceased husband and entitled as such to be placed in possession in full and absolute ownership of all the property of his estate, it being all community property and he having left no forced heirs.
She alleges that her husband died intestate but that a party or parties unknown to her have caused to be recorded in the Conveyance Records of the Parish of Avoyelles, a certain instrument purporting to be his last will and testament, nuncupative in form, by public act, in which Max Koerkel, his nearest blood relative, who resides at Abita Springs in the Parish of St. Tammany, Louisi *563 ana, is made a beneficiary. Upon her prayer to make him party by rule, an order was issued to Max Koerkel commanding him to show cause why the purported will should not be declared null. In her petition she attacks the said will as being null, void and of no effect on many grounds, including forgery and testamentary incapacity. These two grounds of attack seem not to have been pressed however and in fact the only serious contest over the will’s validity arises over the competency of some of the attesting witnesses.
Plaintiff alleges that “the purported testament was not signed by three competent witnesses as required by law.” She did not allege in what respect any or all of them may not have been competent. No issue was made of that however and testimony relating to the incompetency of two of the four attesting witnesses to the will was offered and admitted without objection.
The beneficiary under the will appeared in answer to the rule' and denied all the allegations of the petition relating to the alleged invalidity of the will.
The trial judge entered a decree declaring the will to be illegal, null and void and of no effect and also recognizing the decedent’s widow as widow in community, and his sole heir at law, and as such entitled to be sent and placed in possession of all property belonging to the estate, as owner. Defendant in rule appealed devolutively.
The trial judge did not assign written reasons for judgment and we have no way of knowing on what ground he found the will to be invalid. On appeal counsel for appellee urge several of those originally alleged, but the real issue revolves around the competency of two of the four witnesses who signed the will. One of these is S. LJeansonne who, it is claimed, was not a resident of Avoyelles Parish where the will was executed and the other S. DeNux who, it is claimed, was mentally incompetent to act as a witness.
The law very zealously guards all the acts surrounding the execution of a will. It refers to the formalities attending its confection as “solemnities with which it must be clothed”. Article 1571 of the LSA-Civil Code defines a testament as “the act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title.” In the case of Soileau v. Ortego, 189 La. 713, 180 So. 496, this Court cited with apparent approval the following rule of construction from Corpus Juris, Vol. 68:
“ ‘It is a cardinal rule of construction and interpretation of wills that the intention of the testator as expressed in the will must govern. But the intention to make a will, although clearly stated or proved, will be ineffectual unless the execution thereof complies with the statutory requirements. * * ’ Section 275. And: ‘ * * * any ma *565 terial deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory rule will open up a fruitful field for fraud, substitution, and imposition.’ Section 276.”
In this case we are dealing with a will ■which took the form of a nuncupative' testament by public act. The formalities •or rather the solemnities with which a testament of that kind must be clothed are prescribed in Article 1578 of the LSA-Civil Code. The first requirement is that it "must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.” (Emphasis supplied.)
The will in this case is signed by four persons appearing as witnesses and for the purpose of this discussion, it may be assumed that they were all present when it was received by the notary.
The witness whose signature appears as “S. L. Jeansonne” on the will turns out to be an individual bearing the full name of Sam L. Jeansonne and who, according to his own testimony, was a resident of Alexandria, Rapides Parish, Louisiana, and had been for at least eight months, at the time the will was executed on May 8, 1948. His testimony is corroborated by a certificate of registration for voting purposes in that Parish in which it is stated that he had resided therein since "9-1-17" and this we believe constituted sufficient proof that he was not “residing in the place where the will was executed”, at the time it was made and therefore he could not be a competent witness.
However, as we have stated before there were four witnesses to the will and it is not questioned that the three others besides S. L. Jeansonne were residents of Avoyelles Parish at the time of the execution of the will. Unless therefore one of these three was an incompetent witness for some other reason, the requirements of the law would seem to have been fulfilled.
The three witnesses who signed the will besides Jeansonne are A. J. Roy, A. R. Riddle and S. DeNux. The competency of the first two is not questioned but it is claimed that they did not sign as witnesses in the presence of the notary. Their testimony in regard to the matter was given more than four years after the will was made and they were unable to recall all of the details surrounding its execution. When he was shown the will, the witness Roy declared that the signature "A. J. Roy” appearing on it was not his. But he did recall an occasion when he was in the office *567 of the notary, and this may have been the time at which the will was prepared. We believe that such weak testimony must give way to the recitals of the will itself, an instrument executed in notarial form, to the effect that it was drawn and executed in his presence and signed by him as a witness. There can be no question as to the presence and signature of the witness, A. R. Riddle, since he admits that he was present and signed it.
This leaves us with the claimed incompetency of the witness S. DeNux on the ground of his mental incapacity. On this point it becomes necessary to refer to Article 1591 of the LSA-Civil Code which provides that “the following persons are absolutely incapable of being witnesses to testamentsAmong them are listed under No. 2, “Persons insane, deaf, dumb or blind.” In order to substantiate her claim of incompetency on the part of the witness DeNux, the widow who contested the will produced and filed in the record photostatic copies of an oath taken by two persons, one by Mrs. Josephine Gardiner DeNux as Curator and the other by Felix J. Gosselin as under-curator, of the interdict, Sylvain F. DeNux, Jr., in a proceeding entitled Interdiction of Sylvain F. DeNux, Jr., in the Dictrict Court of the Parish of Avoyelles. Other than that she produced and filed a photostat of letters of curatorship issued to Mrs. Josephine Gardiner in the same proceeding. A copy or photostat of the petition showing on what grounds the interdiction was sought was not offered and we are left without any information whatever on that point.
Whilst interdiction is generally associated', with insanity, and Article 389 of the LSA-Civil Code, in referring to persons who are incapable of taking care of their own persons or administering their estates, specifically mentions those who are “subject to an habitual state of imbecility, insanity- or madness”, it is important to observe that-Article 422 of the Code provides further that “not only lunatics and idiots are liable to be interdicted, but likewise all persons-who, owing to any infirmity, are incapable-of taking care of their persons and administering their estates.” (Emphasis supplied.) It may very well be that the interdiction of Sylvain F. DeNux, Jr., was-pronounced on some ground other than that of mental incompetency and in the absence-of any proof at all, this court would certainly not be justified in holding that he is or was insane and came under the ban of’ witnesses to testaments prescribed by Article 1591 of the LSA-Civil Code. Besides,, it is proper to observe that that Article-specifically mentions persons who are “insane” as being among those incapable of being witnesses to testaments. It does not. say anything about persons who are interdicted and it follows that unless the interdicted person is shown to be insane there: *569 is no reason why he should not be capable of being a witness to a testament.
These are the main issues which have been presented and which are decisive of the case. The views we have expressed lead to a different conclusion than that reached by the trial judge and it therefore becomes necessary for us to reverse that part of the judgment appealed from which declared the last will and testament of the decedent, Otto H. Koerkel, dated 'May 8, 1948, to be illegal, null and void and of no effect and on the other hand to declare the validity of the said will and recognize the legatee, Max Koerkel, as the owner of the property therein bequeathed to him and entitled to be placed in possession thereof.
For the reason stated, it is ordered, adjudged and decreed that the judgment appealed from, to the extent that it declared the last will and testament of Otto H. Koerkel, dated May 8, 1948, to be null and void and of no effect, is hereby reversed, annulled and set aside and it is further ordered that the said last will and testament be and it is hereby recognized to be a legal and valid will, subject to be probated and that Max Koerkel, one of the legatees under the said will be and he is hereby recognized as such and entitled to be placed in possession, as owner of the property therein bequeathed to him and more particularly of the following described property, to-wit:
“Two certain lots of ground together with all the improvements thereon,, all the appurtenances and dependencies, thereof, and all the rights, ways, privileges, servitudes, advantages and prescriptions (both liberative and acquisitive) thereunto belonging, or in any wise appertaining, situated in the Parish of Jefferson, Louisiana, in Sections. 45 and 46, Township 12 South Range Ten East, Southwestern District of' Louisiana, East of the Mississippi River, in the Subdivision known as ‘Hessmer Farms’, and designated as lots or portions ‘A’ and ‘B’ on a sketch and certificate of survey made by Wilford F. Calongne, Civil Engineer, on April 21st, 1932, a print of which is annexed hereto and made a part hereof; according to which survey, the said lots- or portions of ground herein sold have-the following dimensions, viz.:
“Lot ‘A’ is within the area bounded' by the New Hammond Highway, Hessmer Avenue, Lot Eight (8) and Plots-Nos. 338 and 345 of Hessmer Farms: and said Lot ‘A’ measures Fifty feet,, two inches and two lines (50' 2" 2'") front on the New Orleans-Hammond Highway; Fifty feet (50') in width in-the rear on line of Lot Number 8; by a depth on its Western side line of Three Hundred and Twenty-three feet, four inches (323' 4") and a depth on *571 its Eastern side line of Three Hundred and Twenty feet, six inches and four lines (320' 6" 4'"). And said lot ‘A’ is the lower or Easterly Fifty feet (50') of Lots Nos. 9 and 10 or of Plots Nos. 339 and 344 of Hessmer Farms.
“Lot ‘B’ is within the area bounded by the New Orleans-Hammond Highway, Hessmer Avenue, Lake Pontchartrain, and Plot No. 350 of Hessmer Farms; and said Lot ‘B’ measures Fifty feet, two inches and two lines (50' 2" 2'") front on the New Orleans Hammond Highway, Fifty feet (5T) Plus in width on the rear line fronting on Lake Pontchartrain, by a depth on its Western side line of Two Hundred and Thirty Nine feet (2390 extending to Lake Pontchartrain, and depth on its Eastern side line of Two hundred sixty-six feet (266') also extending to Lake Pontchartrain; and said Lot ‘B’ is the Easterly or lower Fifty feet (500 of Plot No. 351 of said Hessmer Farms.”
With the further exception as to the costs occasioned by the opposition of Max Koerkel for which he was cast, and which it is now ordered have to be paid by Mrs. Lilly Young Koerkel, the said judgment is in all other respects, affirmed. The costs of this appeal are also to be borne by the appellee.