*390
 
 SIMON, Justice.
 

 This case involves the validity of a will in nuncupative form by private act.
 

 Oscar Caldwell, a resident of Caddo Parish, died testate on April 4, 1952. On March 12, 1948, he did cause to be executed his will in nuncupative form by private act, in which he bequeathed his entire estate to his surviving widow and to one John (Sugar) Stephens and therein named John B. Adger as the executor of his estate. The will was written by John B. Adger at the request of the testator and was attested to by seven witnesses, all residents of Caddo Parish.
 

 1 On April 15, 1952, the testamentary executor, John B. Adger; submitted the testament of the deceased (Suit No. 111337, docket of the First Judicial District Court, Caddo Parish) for probate and execution. Upon proof of' its validity it was duly admitted to probate and ordered to be executed.
 

 On May 7, 1952, the collateral heirs of the deceased
 
 [1]
 
 filed an opposition to the testamentary executor’s tableau of distribution and thereupon instituted a separate suit (Suit No. 111557 of the docket of the said District Court) directed against the surviving widow, testamentary legatee and executor,
 
 [2]
 
 seeking to have said will declared null and void, and prayed that they, together with Dorothy Caldwell Moore and Johnny Lee Caldwell, the ‘ latter, riot named as'party litigants'herein, be recognized'as the sole legal heirs of thé testator without any regard to the dispositions contained‘in his testament. ...
 

 These two cases were consolidated for trial, and after hearing evidence on the issues raised, the trial court declared the will valid, dismissed the opposition and rejected plaintiffs’ demands. From this judgment opponents and plaintiffs have appealed.
 

 Appellants contend that the will under consideration was made contrary to and violative of the formalities prescribed by our codal articles in that (1) the will was not read by the testator, to the witnesses, or by one of the attesting witnesses to the other witnesses, in the presence of the testator; and (2) the attesting witnesses affixed their signatures thereto at separate places, at different times, and' out of the presence of one another.
 

 Articles 1581 and 1582 of our LSA-Civil Code provide as follows:
 

 1581: “A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place. '
 

 
 *392
 
 “Or it will suffice, if, in the presence .of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will.”
 

 1582: “In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least by two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign, must affix their mark.
 

 “This testament is subject to no other formality than those prescribed by this and the preceding article.”
 

 The formalities to which testaments are subject by the foregoing codal articles are mandatory and must be observed under penalty of being null and void.
 
 [3]
 

 It follows that whether the specified formalities, the non-observance of which is relied on by appellants, were complied with or not, is purely a question of fact, the solution of which must be sought for in the oral evidence contained in the record.
 

 It appears from the testimony that the testator, who was unable to read or write, requested John B. Adger, while in the latter’s plantation office, to write his will. The said Adger thereupon wrote the will as dictated to him in the presence of two witnesses, namely, Dan P. Logan and T. M. Adger. Upon declaring, in the presence of the said parties, that the instrument so written was his last will, the testator affixed his ordinary mark thereto; it was then read aloud by the said Adger to the testator in the presence of said witnesses and duly signed and attested to by them.
 

 Being unable to obtain other witnesses needed for the proper confection of the will, the testator and Adger drove to the small community of Gilliam, Caddo Parish, secured the signatures of two merchants at their respective business places, namely, Mr. Pearce and Mr. Byers, and then returned to AdgePs office, all of this occurring within the space of half an hour. Upon their return, the first two attesting witnesses having remained in said office, it was then decided to obtain three other witnesses. Upon assembling these five witnesses in Adger’s office, the testator declared to them, as he had previously announced to the first two witnesses, that the written instrument which he presented to them was his will, and to which he had affixed his mark in lieu of his inability to sign his name. It then appears that the will was read aloud by one of the five attesting witnesses and duly signed by the last three, the other two having previously and orig
 
 *394
 
 inally signed said will at the time it was written. It also appears that they recognized their signatures so attached thereto and acquiesced in their signatures as though then and there signed.
 

 Appellants concede that the signatures of Pearce and Byers should be disregarded and their testimony eliminated, neither having been at the same place with the other five witnesses who, it is shown, were all present at the reading of said will.
 

 Though appellants strenuously contend that the will was not read aloud by one of the witnesses to the rest, in the presence of the testator, it is our view that the evidence clearly demonstrates a complete observance of that required formality.
 

 All five attesting witnesses concur in their testimony, on direct and cross-examination, that they were unable, due to the interim of four years intervening between the writing of the will and the date of their testimony, a period of time in which the memory of man may become dim and uncertain, to definitely recall which one of them had actually read the will to the others in the testator’s presence. They each positively declare, however, that the will was actually read aloud by one of them; that they individually heard the declarations contained in said instrument as read; and that they were fully informed and had full knowledge of its contents as a result of its being so read aloud, and equally, in view of the testator’s open declarations to them in their presence, justified their conclusion that the instrument was the testator’s last will. One of these witnesses
 
 [4]
 
 testified under cross-examination that he had read the will silently to himself and that it was possible that he could have been the one who read it aloud to the other four witnesses in the presence of the testator. The writer of the will, John B. Adger, testified that at the time all five witnesses were assembled in his office, the will was read aloud by one of the attesting witnesses to the testator and the other witnesses, though admitting his inability to recall the witness who actually did so.
 

 The testimony of the five attesting witnesses and that of John B. Adger, as recited above, stands unrebutted. It is true that the actual identity of the witness who read the will aloud is uncertain. However uncertain that may be, the proven fact remains that the formality of reading the will as prescribed by our law was fully complied with and duly observed.
 

 Our codal article
 
 [5]
 
 does not call for the identity of the attesting witness who actually read the will, and we find a similar provision in the confection of nuncupative wills by public act, the only requirement in the latter instance being that it be “read to the testator in presence of the witnesses.”
 
 [6]
 

 
 *396
 
 ! Whether such a formality was duly observed can only be established by oral proof.' We not oniy find an observance of this formality by unrebutted evidence, but the trial judge, who saw and heard the witnesses who testified before him, was' of the opinion that this legal requisite had been sufficiently complied with, and that the will had been read aloud by one of the witnesses to the others, in the presence of the testator, and we are not prepared to say that he erred.
 
 [7]
 

 It is fundamental in our law that the burden of proof rests upon the one who attacks the validity of a will, probated in accordance with law, to prove its invalidity.
 
 [8]
 
 Applying this rule, we cannot say that appellants have substantially or convincingly discharged this duty.
 

 It has been the policy of our law to countenance and vindicate the wishes of deceased persons, but in doing so we have equally recognized that the legal formalities in the drawing up of wills must be scrupulously observed in all essential respects and with substantial precision. The tendency of our present day jurisprudence does not exact an absolute, strict and literal application of the wording which prescribes the observance of specified formalities, and that such exactitude should not be pushed to extremes unless it be in those instances in which' the law- is palpably violated. We are in full accord and have so announced, that a- .substantial compliance with the formalities required in' the execution of wills is sufficient to sustain its validity, more especially where there is no -suggestion or intimation of fraud, deception, undue influence, or mental incapacity. We concede that Where there is shown a material deviation from or relaxation of our codal rule, this would not justify us, even to bring about justice in a particular instance, in departing 'from these requirements.
 
 [9]
 
 But we'do not find this to be true or applicable' in this instance.
 

 We experience little difficulty in resolving the second question presented by appellants. They contend that the witnesses to a nuncupative will' under private signature 'must sign the'instrument in the presence of each other and that 'this • formality was not observed, thus striking the will with nullity.
 

 LSA-Civil Code, Article 1582, supra, provides that the will “must be signed by the testator, if he knows how or is able to sign, and by the witnesses”. Nowhere in the codal article does it state that the witnesses must sign
 
 in the presence of each other or in the presence of the testator.
 
 We are justified in assuming that the redactors of our civil code purposely and de
 
 *398
 
 ,'liberately- omitted and excluded, as-a prerequisite to its validity, the formality of having the subscribing witnesses sign a will in the presence of each other. It is argued on behalf of appellants that by the use of the words “in either case,” found at the beginning of the provisions of Article 1582, it constituted a continuation of both the first and second paragraphs of Article 1581, thereby obviating the necessity of repeating the provisions of Article 1582 after each of the paragraphs. From this contention they conclude that the phrase “in the presence of the same number of witnesses,” contained in the second paragraph of Article, 1581, applies equally as well to the signing by the testator and the witnesses as it does to the presentation of the will by the testator.
 

 We cannot agree with this interpretation and construction. Article 1581 provides that whenever the testator has written his testament or caused it to be written out of the presence, of witnesses, he shall then declare to them, and in their presence, that the instrument contains his last will. The language so used is clear and specific and certainly does not require the signing of the will by the witnesses in each other’s presence nor that it shall be signed in numerical order without interruption.
 

 The Article concisely says that the witnesses shall sign the will, and no more. There is no provision requiring the witnesses to affix their signatures to the will at the same time, or that it shall be signed simultaneously or that the witnesses shall act in concert with each other. It further provides that as long as the witnesses sign the will after it has been read, all in the presence of the testator, it is subject to no other formality.
 

 The language prescribing the formalities to be observed in the confection of nuncupative wills by private act is plain and unambiguous and conveys a clear and definite meaning. To read into the codal articles, supra, the requirement that witnesses must sign the will in the presence of each other would be tantamount to extending its provisions by adding thereto words which were not intended to be there. The clarity of its provisions do not afford us the right of resorting to or applying the rules of construction by implication, and by so doing add language which would necessarily enlarge and extend its all-exclusive scope. Such a construction does violence to the g-eneral principle of interpretation wherein it is universally recognized that the expressed mention of one thing implies the exclusion of another. This rule applies with equal force, even though there are no negative words excluding the things not mentioned.
 
 [10]
 
 We may well apply the translated maxim: “That which is expressed makes that which is implied to cease.”
 
 [11]
 

 
 *400
 
 Two cases have been cited to us by appellants containing language to the effect that witnesses to a nuncupative will by private act must sign their names in the presence of each other.
 
 [12]
 
 A reading of these two cases will disclose that the facts in the Crane case are dissimilar to those here presented, and we recently held that the language used in both cases is pure dicta.
 
 [13]
 

 In the Crane case the court held the will to be defective, for the reason that it was not “attested by the witnesses at one time; some of them affixed their names to it at night, and some the succeeding day. Between the period when the first and the last signed, alterations were made in the instrument. * * * ” The court accordingly held that, “there were not five witnesses to the last will”. The 'court further held the 'will invalid for the reason that the will was never presented by the testatrix to two of the witnesses, nor was there any occurrence between the testatrix and said witnesses which could be said to be the equivalent of a presentation. It is significant to note in.that case we did not declare, in unmistakable language, that the signing of a will by the witnesses in the presence of each other was a solemn requirement to lend validity thereto. Its defectiveness was declared as a result of the interval of time between the signing of the instrument by some of the witnesses and of the others, and more particularly as a result of the alterations made to said will during that interim. The holding in that case is inapplicable to the issues here, for as previously stated, all five of the attesting witnesses were present when three of the witnesses signed the will and when two of them, who had signed the document a half hour previously, again recognized the genuineness of their signatures, all being done in the presence of the testator.
 

 It is true that in the Succession of Seals, supra, we held that a nuncupative will under private signature of the decedent is valid, if it is shown that the witnesses affixed their names to it in the presence of the testator and in the presence of one another.
 

 However, in the Succession of Bush, supra, we recently held that there is no specific provision of the civil code requiring witnesses to a nuncupative will by private act to sign their names in the presence of each other, and that although the Crane case and the Succession of Seals, supra, had declared this to be a necessary formality, we held such an expression -to be purely dicta.
 

 We, therefore, conclude that since our codal provisions, supra, do not specifically require that a nuncupative will under private act must be signed by the witnesses
 
 in the presence of each other,
 
 such a re
 
 *402
 
 quirement, as contended for by appellants, is without substantial basis and cannot be given recognition.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . Martha Caldwell Stephens, Ludie Stephens and John Stephens.
 

 [2]
 

 . Annie Burney Caldwell, John (Sugar) Stephens and John B. Adger.
 

 [3]
 

 . LSA-Civil Code, Article 1595.
 

 [4]
 

 . T. O. Arrington (Tr.Ev. pp. 193, 194).
 

 [5]
 

 . LSA-Civil Code, Article 1582.
 

 [6]
 

 .LSA-Civil Code, Article 1578.
 

 [7]
 

 . Graves v. Graves, 10 La.Ann. 212.
 

 [8]
 

 . Succession of Lirette, La.App., 5 So.2d 197; Succession of Prejean, 224 La. 921, 922, 71 So.2d 328.
 

 [9]
 

 .Corpus Juris, Vol. 68, Section 276; Succession of Crouzeilles, 108 La. 442, 31 So. 64; Wood v. Roane, 35 La.Ann. 865, 869; Succession of Beattie, 163 La. 831, 112 So. 802.
 

 [10]
 

 . American Jurisprudence, Yol. 50, par. 243, et seq.
 

 [11]
 

 . American Jurisprudence, Vol. 50, par. 243; Black’s Law Dictionary, 2d Ed., p. 468.
 

 [12]
 

 . Crane v. Marshal, 1 Mart.,N.S., 577; Succession of Seals, 174 La. 275, 140 So. 476.
 

 [13]
 

 . Succession of Bush, 223 La. 1008, 67 So. 2d 573.