HAMLIN, Justice ad hoc.
Defendants appeal from a judgment of the trial court holding null and void the nuncupative will by public act of their uncle, E. R. Fuller, for the reason that the formalities prescribed by Article 1578[1] of the LSA-Civil Code were not complied with at the time of its execution.
The testator died on May 4, 1955. His wife predeceased him, and he was survived by no forced heirs. His will, dated September 9, 1949, designated four of his nieces as sole legatees. Plaintiffs are his sister, his brothers, and the children of his deceased brothers.
The trial judge found that two of the attesting witnesses were not present when the will was dictated by the testator. He also found that the notary did not read it back to the testator in the presence of the witnesses. His reasons set forth below contain a clear and explicit analysis of the testimony of the notary and attesting witnesses:
“This is a suit to annul a last will and testament which was written in nuncupative form by public act. The reasons set forth for setting aside the said will are:
“1. That the witnesses to the will were not present when it was written and dictated.
“2. That the witnesses to the will did not see and were not present when the testator signed the same.
*149 “3. That the will was written out of the presence of the witnesses.
“There is no contest over the fact that the will was drawn in proper form and that it was signed by the testator and three attesting witnesses, together with the Notary Public. On the trial of the case Miss Susie Batton, the Notary, and Mr. Travis Taylor and Mrs. Lula Harkness, two of the attesting witnesses, testified. The testimony of these witnesses has been transcribed and is a part of the record of this suit, and it is upon the proper weight and interpretation of this testimony that the decision of this case rests.
“Miss Susie Batton is a very highly respected legal secretary of this Parish; she having been associated with two prominent attorneys of this bar for a period of twenty (20) years or more. Her testimony, in effect, was that all of the formalities of law were complied with in the making of this will.
“Mr. Travis Taylor is likewise a very highly respected citizen of Minden, Louisiana. The Court has been personally acquainted with Mr. Taylor since childhood. He is a very quiet and unassuming person, but enjoys the very highest type of reputation in every respect. His testimony was to the effect that he did not believe the will was perfected in the manner required by law and stated in the said will. Knowing the witness and having observed his demeanor on the stand, there is no doubt in my mind but that he was of the opinion that this will had never been read to him in the presence of the testator and the Notary as stated in the will, and as required by law. It is true, as stated by counsel for the defendants in his brief, that Mr. Taylor did not positively testify that the will had not been read to the witnesses, etc. However, this Court is well aware of the fact that Mr. Taylor is a business man and that he was an unwilling witness, to the extent that it was very unpleasant for him to testify contrary to Miss Susie Batton, his business neighbor and acquaintance for many years. However, I interpreted Mr. Taylor’s testimony to the effect that if the requirements in the will had been fulfilled, he certainly would recall them.
“Mrs. Lula Harkness, likewise, testified that she did not recall the will having been perfected according to its terms. It was obvious, from watching Mrs. Harkness on the witness stand, that she likewise was doing everything possible in order not to contradict Miss Batton’s testimony, if such were possible. However, there was no doubt in my mind, at the conclusion of her testimony, that this will had not been drawn and dictated in her presence.
“It is not a pleasant duty for this Court to set aside a will, after having been drawn by a respected citizen of this Parish. However, I feel it is the primary duty of *151 the trial judge to set forth his conclusions of the fact as he has seen them and heard them from the witnesses during the trial of the case. It would be easy for me to understand how both Mr. Taylor and Mrs. Harkness could forget or not be certain of their mere signature to an instrument, such as a deed, mortgage, affidavit, etc., but I believe they would certainly have recalled if they had not been present during the dictation, reading, etc. of a nuncupative will.
“For the reasons shown herein, it is my opinion that the plaintiffs should have judgment declaring the said will to be null and void.”
Were this matter strictly one of fact, we would adhere to the rule that the trial judge, having seen and heard the witnesses, should not be disturbed in his findings of fact unless manifestly erroneous. However, we also have a question of law presented for our determination.
In Succession of Beattie, 163 La. 831, 112 So. 802, 805, we held:
“Testimony of subscribing witnesses which is adduced on the contest of the will and which, in effect, impeaches the solemn statements contained in the instrument which by their signatures they have attested as correct, is not in itself sufficient to overcome the presumption of validity arising from their presence.and signatures and the official certificate of a public officer fortified by his oath. Their testimony imist be corroborated by independent facts or reasonable inferences. * * *” (Emphasis ours.)
This doctrine was subsequently assailed in Bernard v. Francez, 166 La. 487, 117 So. 565, 567, but the Court reaffirmed its holding, stating:
“Counsel criticize the doctrine announced in the Beattie case as being without precedent, and they declare that such a principle is fraught with latent dangers of fraud on the rights of a testator to dispose of his property. But there would be room for greater fraud on the right of the testator to dispose of his property and on the rights of the legatees if the principle contended for by counsel should be recognized — that is, to permit subscribing witnesses to deny their own solemn act and to break down the solemn authentic act of a sworn officer.”
In the instant case, both Mr. Taylor and Mrs. Harkness admit that their signatures as subscribing witnesses to the will are authentic. However, Mr. Taylor stated that he did not remember signing the will and did not believe that the will was perfected in the manner required by law, as stated therein, and Mrs. Harkness declared that she did not recall the will having been perfected according to its terms.
*153 We do not believe that their testimony, which impeaches the solemn declarations contained in the nuncupative will herein involved, is legally sufficient to overcome the presumptinon of validity which the law accords to so solemn an act. Succession of Beattie, supra.
“The recitals of a nuncupative will by authentic act must be considered as proved until disproved.” Succession of Block, 131 La. 101, 59 So. 29, 30; Renfrow v. McCain, 185 La. 135, 168 So. 753; Succession of Prejean, 224 La. 921, 71 So.2d 328.
Here, we do not find that the negative testimony of the two subscribing witnesses is supported by sufficient independent facts •or reasonable inferences. Their testimony must give way to the recitals of the will itself — an instrument executed in notarial form, which states that it was drawn and executed in the presence of the witnesses and signed by them as witnesses. Succession of Koerkel, 226 La. 560, 76 So.2d 730.
“It is fundamental in our law that the burden of proof rests upon the one who attacks the validity of a will, probated in accordance with law, to prove its invalidity. Applying this rule, we cannot say that appellants have substantially or convincingly discharged this duty.” Stephens v. Adger, 227 La. 387, 79 So.2d 491, 494. See, also, Succession of Prejean, supra.
Although the notary admits that she wrote the preamble to the will before the testator arrived for its dictation, we do not believe that this would have any effect upon the validity of the instant will. The last paragraphs of the will incorporate and affirm what was stated in its preamble, and the will likewise states that it was read in its entirety to the testator in the presence of the witnesses. There was substantial compliance with the formalities required. Succession of Prejean, supra; Stephens v. Adger, supra.
Further alleging that appellants had received some of the movables and cash left by the deceased, appellees prayed for a judgment against appellants ordering the return of said movables and cash. In dismissing these demands, the trial judge stated that appellants were absentees and not amenable to personal judgment herein. His judgment dismissing these demands will be affirmed; particularly, in view of our conclusion that the will is valid.
For the reasons assigned, the judgment of the trial court decreeing the will of E. R. Fuller to be null, void, and of no effect, and annulling and avoiding the probate thereof in proceedings bearing No. 2566 on the Probate Docket of the Twenty-Sixth Judicial District Court, styled “Succession of E. R. Fuller,” is reversed and set aside. The judgment dismissing all other demands of plaintiffs is affirmed. All costs are to be paid by plaintiffs.

. The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.
“This testament must be dictated by the testator, and written by the notary as it is dictated.
“It must then be read to the testator iu presence of the witnesses.
“Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts.”