REGAN, Judge.
Plaintiffs, Arnold Watson, Anderson Watson, and Benjamin Watson, collateral relatives of the decedent, instituted this suit against the defendants,[1] the residuary and particular legatees of the Succession of Mamie Watson, endeavoring to nullify an order admitting to probate her last will and testament, which was executed in nun-cupative form by public act.
Plaintiffs asserted that the will was not dictated to the notary, that the “X” affixed by the testatrix was not her mark, that it was improperly witnessed and, alternatively, that the document failed to explain sufficiently the disability which caused the testatrix to affix her mark thereto rather than her name and, finally, that the testatrix was mentally incompetent when the will was confected since she was under the influence of drugs.
The defendants, who had actually been placed in possession when this suit was filed, answered and generally denied the allegations of plaintiffs’ petition.
From a judgment dismissing the plaintiffs’ suit, they have prosecuted this appeal.
The contested will, a notarial act performed by Israel M. Augustine, Jr., was executed on February 3, 1961, in the room of Mamie Watson while she was confined in Sara Mayo Hospital. The foregoing event occurred approximately one week before her death. The document on its face meets all of the formalities prescribed by the Civil Code[2] relating to the execution of a nuncupative will by public act. The signatures of six persons appear thereon as witnesses. Since the testatrix signed with an “X”, the document reveals this explanation thereof:
“The Testatrix declared unto me, Notary, that she is not able- to sign her name because of physical disability, but that she is able to and does make her mark as a sign of her intent that this be her last will and testament.”
In order to invalidate the will, the plaintiffs endeavored to prove that the testatrix was capable of writing her name when the will was confected and that six witnesses and the notary were never gathered together in decedent’s hospital room on the date that the document was executed.
Dr. Bert Glass, decedent’s treating physician, testified that he was of the opinion that Mamie Watson could sign her name on February 3, 1961, because she had signed a surgery permit the night before and had expressed no complaints of pain in her right arm, according to his records. However, Mrs. Verna Thomas, a practical nurse on duty during decedent’s terminal illness in Sara Mayo Hospi *614 tal, asserted that the patient’s arms were so sore she could hardly lift them.
Mrs. Thomas was called by' plaintiffs to establish that six persons were not present at one time in the patient’s hospital room on the day that the will was executed. She stated that she walked into the room and saw three persons with the decedent, one of whom possessed a legal document. She further recalled seeing someone place a pencil in decedent’s hand and then guide it along the paper. Her testimony was of no probative value in view of the fact that she could not recall on what date she had witnessed the hand guiding incident and, further, that her duties required her presence in various other rooms located on the second floor of the hospital. Thus she was hardly in a position to affirmatively testify that six persons were not gathered together in the decedent’s room at one time when the will was executed.
Plaintiffs offered the testimony of two other witnesses who related that they had never observed six persons gathered together in the decedent’s room during their visits, and they recalled that the decedent extended her right hand to greet them on these occasions.
In order to rebut the plaintiffs’ evidence, Israel Augustine, Jr., the notary, testified that he was requested to visit the hospital by the decedent and thereafter executed the will in conformity with her wishes. He stated that the recitations contained therein were true and that the six witnesses whose names appear thereon were present. Augustine explained that the testatrix affixed a mark because she was weak and in pain and indicated that she could not comfortably write her name. Since he believed that the will would ultimately be contested, he returned to the hospital several days later and advised the testatrix to write her name under the “X”.
In support of their alternative contention, plaintiffs made an effort to prove that the testatrix was rendered mentally incompetent by the use of narcotics administered to alleviate pain. However, the record clearly reveals that the effect of the drugs had worn off at least three hours before the will was executed.
Predicated on the foregoing evidence, the trial judge very properly concluded that the plaintiffs had utterly failed to prove that the will was defective as to form or that the decedent was incompetent when it was executed.
It is a well settled principle of law that the contents of a nuncupative will by public act are presumed true until disproved.[3] Plaintiffs’ allegations of invalidity are based largely on conjecture, for the reason that the evidence adduced herein totally fails to support the charges of nullity.
Plaintiffs also insist that the will is invalid because it merely recites that the testatrix’s physical disability prevented her from writing her name, whereas the cause therefor should have been expressed. We find no merit in this contention. LSA-C.C. Art. 1579 provides:
“This testament (nuncupative by public act) must be signed by the testator; if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act.” (Parenthetical material added.)
We are cognizant of several decisions which, in interpreting this article, have indicated that it is desirable to state the exact nature of the testator’s disability. However, it has been a uniform pronouncement of the courts that a recitation of physical incapacity is sufficient to satisfy the codal requirement.[4]
*615 Finally, we may dispose of the allegation of mental incapacity by noting that the plaintiffs obviously abandoned this contention in oral argument before us since, the record lends no support thereto.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The Bank of New Orleans and Trust Company and Dryades Savings & Loan Association were named defendants also. Plaintiffs sought to enjoin both financial institutions from disbursing funds of the decedent in conformity with a judgment of possession obtained by the defendant legatees.

. LSA-C.C. Art. 1578
“The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.
“This testament must be dictated by the testator, and written by the notary as it is dictated.
“It must then be read to the testator in presence of the witnesses.
“Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts.”

. Renfrow v. McCain, 185 La. 135, 168 So. 753.

. Succession of Davis v. Richardson, 226 La. 887, 77 So.2d 524.