Marionneaux vs. Dupuy, Executor.

No. 11,969.

CALVIN W. MARIONNEAUX VS. VALIERE P. DUPUY, EXECUTOR.

Legitimate children only fall under the provisions of the law relative to forced
heirship. The law divides children into three distinct classes, legitimate,
illegitimate and legitimated. Legitimate children are those who are born
during the marriage; illegitimate children those born out of marriage.
Illegitimate children may be "legitimated" in certain cases in the manner
prescribed by law, but illegitimate children are not by "legitimation" trans-
formed into "legitimate" children. Legitimated children take "the rights of
legitimate children" only by force of affirmative provisions of law to that
effect. By Art. 199 of the Civil Code children legitimated by a subsequent mar-
riage of the parents have the same rights as if they were born during marriage.
This special exceptional privilege throws legitimation resulting from any
other cause outside of the purview of the law-maker under the rule *affirmatio
unius est exclusio alterius.*

APPEAL from the Fourteenth Judicial District Court for the
Parish of Iberville. *Talbot, J.*

*George Wailes* and *Guy Hebert* for Plaintiffs, Appellants.

*Sims & Gondran* for Defendants, Appellees.

Argued and submitted December 19, 1895.
Opinion handed down February 24, 1896.

The opinion of the court was delivered by

NICHOLLS, C. J. This case was before us in 1895 on exceptions
and was remanded for a trial on the merits. The facts and plead-
ings will be found in the 47th Annual, page 943. Plaintiffs now
bring it up on appeal from a judgment in favor of the defendants.

A very brief reference to the facts will be here given. On the
30th of August, 1893, Silvert Marionneaux appeared before a notary
public in the parish of Iberville and two witnesses and acknowledged
the present plaintiffs as his natural children. The authentic act evi-
dencing this acknowledgment closed with the words that " he "
(appearer Marionneaux) "further declared that it is his intention
in making this declaration to legitimate said children." On the
same day and place, and fifteen minutes after the act of acknowl-
edgment was passed, Marionneaux executed his last will and testa-

ment before the same notary and three witnesses, two of the witnesses being the same as those in the first act.

The will opens by the announcement made by Marionneaux that he left no forced heirs.. The testator proceeds to make to the different plaintiffs herein special legacies of particular lots of ground, willing that after these special legacies and his debts should have been paid, the residue of his estate should be divided into twelve equal parts and pass to his nephews and nieces as indicated in the testament. He refers to these relatives as his heirs, while in each of the successive legacies before mentioned he refers, as each is made, to the children as being simply his " acknowledged child."

The plaintiffs, claiming that the first act to which we have referred " legitimated " them, and by so doing gave them the *status* and rights of "forced heirs" of Marionneaux, brought the present action, in which they prayed that judgment be rendered in their favor decreeing them to be owners of the undivided two-thirds of all the property belonging to the succession of Silvert Marionneaux; and that all the legacies made to other. parties in the will be reduced to the disposable portion, and that they be placed in possession upon paying the debts against it.

In our opinion remanding the case, after quoting the provisions of the will, we said that that particular instrument, upon its face, would negative the claim advanced by the plaintiffs; that it was the clearly expressed intention of the testator to dispose thereby of his entire estate, and to direct that the plaintiff should take nothing from it beyond the specific legacies made to each. We held that the two acts were so closely connected that they really form one and the same transaction and were to be read together; that in matters of testamentary dispositions, the will of the testator was to be carried out if possible; that where a term which the testator has used is susceptible of two meanings, and it is shown by the testator's contemporaneous acts and conduct that the meaning which would have been accepted, in the absence of such acts and declarations, was not the one intended by him, we felt ourselves authorized to go into the inquiry as to what the testator's real purpose was; that it was quite probable that neither the notary nor Marionneaux understood the significance of the word "legitimate;" that, so far as the will itself would show, it was clear that Marionneaux himself did not. We therefore said that on the return of the cause to the Dis-

32

trict Court this whole question should be left to be disposed of as one of the issues on the merits. The case comes back very much in the same situation in which it was before; the only new testimony bearing upon the point is that of the notary who drew up the two acts, who declared that he copied the first act (that of acknowledgment) from a paper prepared and written out, not by Marionneaux himself, but by Samuel Mathews, his general attorney. No explanations or discussions seem to have taken place in regard to the instrument. Mathews died before the case was tried in the District Court.

Defendants maintain that even had Marionneaux intended to have given to plaintiffs the status of "legitimate" children his purpose would have failed by reason of his having referred to them in the act as "his natural children." This declaration would of itself (they contend) do away with "legitimation" as the consequence of the act. They refer us to Sec. 2173 of the Revised Statutes, wherein it is said: "Another way of legitimating natural children is, where a father declares by writing executed by his own hand or which he causes to be executed by a notary public and attested by three witnesses that he acknowledges such a one for his son, designating him expressly by name. But in such acknowlegment the father ought not to say he is his natural son, for if he does the legitimation will have no effect."

Plaintiffs reply that this section of the Revised Statutes was repealed by Act No. 68 of 1870, which in its first section enacts that "natural fathers and mothers shall have power to legitimate their natural children by acts declaratory of their intentions made before a notary public and two witnesses; provided, that there existed at the time of the conception of such children no other legal impediments to the intermarriage of their natural father and mother except those resulting from color or the institution of slavery," and in its second section that "all laws or parts of laws in conflict with the provisions of this act, except an act entitled an act relative to marriages, approved November 5, 1868, be and the same are hereby repealed; and in the third section makes the law take effect from and after its passage.

They claim that though Act 65 of 1870 was approved March 15, 1870, none the less the special statute controls in matters of conflict under the provisions of Act No. 50 of 1870 and the decision of this court in the Succession of Colwell, 34 An. 269.

We think appellants are correct in their contention that under the provisions of Act No. 68 of 1870 the declaration of the natural father in the authentic act, in which he announces his intention to legitimate a particular child, that the child so intended by him to be legitimated was his natural child, no longer has the effect of destroying the proposed legitimation. An act of just such a character was recognized and enforced by this court in the Succession of Llulla, 41 An. 87.

So holding, we are called on to examine the acts referred to and to see what their legal effect is. We have already decided that they were to be read together, and therefore that particular question is not before us. We thought it right, in remanding the case, to leave open the door to the introduction of other evidence of contemporaneous acts or conduct which might assist us in construing the word " legitimate " as used in the act of acknowledgment, but the result of our doing so has been as just stated.

Assuming that Marionneaux intended to legitimate these plaintiffs and did legitimate them, did forced heirship result from " legitimation."

The District Judge correctly states that " the quality of heirship and the rights of inheritance are the creature of the law and regulated by positive provisions. They do not exist by implication. The demand of the plaintiffs to be included in the category of heirship must be made to appear by some positive or affirmative legislation."

The system of forced heirship is, if we are not mistaken, peculiar in the United States to Louisiana and it includes within it such persons, and none others, as are affirmatively declared to fall under its operation. Legal heirship, unless accompanied by certain special enumerated conditions, is outside of the system. Collateral relations, for instance, do not fall under its terms.

Art. 1493 declares that donations *inter vivos* or *mortis causa* can not exceed two-thirds of the property of the disposer, if he leaves at his decease a legitimate child; one-half if he leaves twochildren and one-third if he leaves three or a greater number. Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

Art. 1494. Donations *inter vivos* or *mortis causa* can not exceed two-thirds of the property if the disposer, having no children, leaves a father or mother or both.

Art. 1495. In the cases prescribed by the two last preceding articles the heirs are called forced heirs because the donor can not deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them.

Art. 1496. Where there are no legitimate descendants, and in case of the previous decease of the father and mother, donations *inter vivos* or *mortis causa* may be made to the whole amount of the property of the disposer, saving the reservation made hereafter.

The persons selected as the objects of the law's solicitude are " legitimate " not " legitimated " children.

Plaintiffs assume that this is a classification not recognized by the law, but we think otherwise. The law divides children into three distinct classes, for Art. 173 declares that " children are either legitimate, illegitimate or *legitimated*." (Italics ours.)

Legitimate children are those who are born during the marriage (Art. 179).

Art. 180. Illegitimate children are those who are born out of marriage.

Illegitimate children may be legitimated in certain cases in the manner prescribed by law (Art. 180).

These plaintiffs were not born during marriage; they therefore did not fall under the first classification, but being born out of marriage they did fall under the second.

The law has never attempted arbitrarily to break up this, its own classification, and convert an "illegitimate" into a " legitimate " child. The most it has done through the power which it can exercise over the subject has been to authorize the converting of an "illegitimate" into a "legitimated" child, and this having been done, then, under certain circumstances, to give to this " legitimated " child " the rights of a legitimate child."

Art. 199 says: " Children legitimated by a subsequent marriage have the same rights as if they were born during marriage," but none the less these children here alluded to are not by this provision of the law made " legitimate " children; on the contrary, the preceding article speaks of marriage simply as legitimating them. If they take the rights of a " legitimate " child, it is not by force of their being " legitimated," but by the direct affirmative force of the special revision of Art. 199 investing them with those rights.

We know of no law other than that contained in Art. 199 of the

Civil Code which gives to a "legitimated" the rights of a "legitimate" child.  The very fact of this special exceptional privilege throws all legitimation resulting from causes other than that of a subsequent marriage between the natural parents of the child outside of the purview of the law-maker under the rule *affirmatio unius est exclusio alterius.*

Plaintiffs' counsel suggests that that portion of Art. 199 of the Code of 1870 which recites "by a subsequent marriage" should, in the interpretation of Art. 199 with Art. 180, be eliminated, or regarded as surplusage, so that it would read: "Children legitimated have the same rights as if they were born during marriage," but we know of no authority under and by virtue of which we could thus change the law.

While we have gone into an examination of the rights of the parties upon the assumption that Marionneaux intended, through the act executed by him, to transfer these children into "legitimate" children, we are of the opinion that such was not in point of fact either his intention or his expectation.

The declaration made by him in his will (made practically simultaneously with the act of acknowledgment) that he had no forced heirs, the reference to these plaintiffs, as he successively made them special legacies as his "acknowledged children," the disposal of the whole residue of his property, by testamentary dispositions, to his nephews and nieces, designating them as his heirs, exhibit in an unmistakable manner that plaintiffs' pretensions and claims are utterly without foundation both in law and in fact.  Marionneaux evidently intended by the first act to confer upon the plaintiffs a status which they did not have before—a status such as would give effect to the bequests immediately afterward made in their behalf by him—he certainly did not intend to render nugatory bequests made to others at the same time under an absolute power of disposal.

Had, however, Marionneaux desired and expected to have made " legitimate " children of these natural children, his desire and expectations would have failed; the utmost he could have done would have been to have "legitimated" them, and "legitimating" them would not have been a sufficient basis upon which to predicate this action.

We think the judgment appealed from is correct, and is hereby affirmed.