PROVOSTY, J.
The plaintiffs are the collateral relations of John J. Davenport, deceased. The latter, some 20 days bdfore his death, sent for the principal notary of the parish and executed before him an act acknowledging the defendants as his natural children and legitimating them, and execut *1012 ed also two testaments. In the first he gave the children one-fourth of his estate; in the second he made them his universal legatees. This suit is brought to have these three acts declared to be null and of no effect.
The grounds are:
First. That the notary was not in fact a notary, for the reason that he had not taken the oath or filed the bond required by law.
Second. That the testaments are lacking the requisite number of witnesses, because one of the attesting witnesses did not sign, and another was disqualified by reason of interest, he being the executor named in the will.'
Third. That the act of acknowledgment or legitimation is informal, in that it fails to show that no legal impediment existed to the marriage of the parents at the time of conception; or that the deceased had no ascendants or legitimate descendants living, or that the children named were not adulterous or incestuous; and that even the evidence does not show these essential facts.
In the brief, but not in the petition, the further grounds are taken: First, that marriage is the only means of legitimating children; and that, consequently, Act No. 54, p. 63, of 1894, prohibiting marriage between whites and persons of color, has the effect of precluding the legitimation of the issue of the illicit union of such persons; third, that the three acts, when read together, show that the intention was merely to acknowledge the children, and not to legitimate them.
1. The evidence shows that the notary had been duly commissioned, and had taken an oath, and at divers times had filed bonds, and had been acting as notary for 25 years, and was the principal notary of the parish; but that he had failed to file a copy of his oath in the offices of the Secretary of State and of the clerk of court as required by law, and also to renew his bond in time to keep his commission alive. Therefore, at the time-of the execution of the acts in question he-was not a notary de jure. But we think it would be an intolerable hardship to require-everyone who needs the services of a notary to ascertain first, under pain of nullity, whether he has or not filed his oath or bond with the Secretary of State, etc. If the notary is a notary de facto, it is safe to have ■ recourse to him. The adoption of the doctrine of officers de facto was forced upon the courts by just such situations as that presented in this case. Here is a man dying who sends for the principal notary of the parish to receive his last will. It would be a strange law that would in such a case annul the will because the notary had not 25 years before filed his oath in the office of the-Secretary of State, or had filed his bond a day or two too late. The validity of acts passed by de facto notaries was recognized by this court in the case of Monroe v. Liebman, 47 La. Ann. 155, 16 South. 734. The doctrine of the validity of acts of de factoofficers in general is too well established to-need to be supported by citation of authorities. In Citizens’ Bank v. Bry, 3 La. Ann. 631, the validity of the acts of a deputy-notary public was recognized.
We are not struck forcibly by the argument that the office which the notary filiscomes into existence with and by the commission given him by the Governor, and ends with it; so that when the commission lapses the “office” also vanishes; and that, therefore, it is not properly an “office”; and, as a consequence, there can be no such thing as a notary de facto. True, there cannot be such a thing as a de facto incumbent of an office that does not exist; but there are such officers as notaries public, and if a person holds a commission as one, and acts as one, and has the reputation to be one, he is clearly one under the principle of the law *1014 of officers de facto. See 8 A. & E. E. of Daw, p. 771 et seq. '
In the case of Cragg v. Westmore, 13 La. Ann. 344, the notary himself was plaintiff.
2. In the case of Keller v. McCalop, 12 Rob. 639, this court said:
“The general principle in relation to the capacity of a testamentary witness is that all persons are capable, with the exception of those who are excluded by express law.”
Now articles 1591, 1592, Oiv. Code 1900, designate as the persons incapable of being witnesses to testaments, heirs, legatees, women, and persons deaf, dumb, or blind, or under 16 years of age, or whom the criminal laws declare incapable of exercising civil functions. No mention is made of executors.
3. As to the witness who, it is said, did not sign, he gave his name as “Francesco Cutero” and signed as “Fresco Cutero.” Parol evidence to show the identity of the two was objected to, but was properly admitted. Succession of Crouzeilles, 106 Da. 442, 31 South. 64. Besides the court would haveo had no difficulty in reaching the same conclusion from the documents themselves and the attending circumstances.
4. Article 200,'Civ. Code 1900, provides as follows:
“A natural father or mother shall have the power to legitimate his or her natural child by an act passed before a notary and two witnesses, declaring that it is the intention of the parent making the declaration to legitimate such child or children. But only those natural children can be legitimated who are the offspring of parents who, at the time of conception, could have contracted marriage. Nor can a parent legitimate his or her natural offspring in the manner prescribed in this article, when there exists on the part of such parent legitimate ascendents or descendents.”
The sole requirement here prescribed is that there shall be passed before a notary and two witnesses an act wherein the parent shall declare his intention to legitimate the child. There is no requirement that the act shall negative the existence of the facts which would preclude the legitimation. These facts are in no wise dependent upon-the will of the parties, and could not be affected one way or the other by the recitals-of the act; the recital of their nonexistence would prove nothing; their proof or disproof is a matter depending upon evidence dehors the act Stephens v. Duckett, 111 La. 979, 36 South. 89. The object of the law in prescribing certain forms for the legitimation is,, “to discourage concubinage by compelling the parent to publicly avow his shame before a notary public and witnesses.” Succession of Llula, 41 La. Ann. 87, 6 South. 555. For' the full accomplishment of that object the recital of the nonexistence of the impediments is entirely unnecessary.
5. So far as concerns the absence of the evidence on the subject of the existence vel non of these impediments, the presumption is that they did not exist; and, in the absence of contrary proof, the court will so-assume. Moreover, the act itself carries with it an assertion of their nonexistence, for presumably it would otherwise not have been passed.
6. The argument that children can be legitimated only by marriage, or, in other words, that children legitimated otherwise1 than by marriage have no better legal status as heii;s than children merely acknowledged, cannot receive our sanction. The chapter of the Code devoted to illegitimate children-is divided into two sections. The first section treats of legitimation. The second treats of the acknowledgment of illegitimate-children. If one meant no more than the other, why this separate treatment? All the articles of our Code on the subject of acknowledgment stood just as they stand today, when the Degislature passed the acts-of 1831 (page 86, No. 37) and No. 68 of 18701 (page 96) providing for the legitimation of children. If this legislation was to have no effect, why take the trouble of it?
In the case of Marionneaux v. Dupuy, 48 *1016 La. Ann. 496, 19 South. 466, the court found •on the facts of the case, that the deceased had not intended to legitimate his children, ■ but only to acknowledge them; hence all that may have been said in that decision touching the effects of legitimating must be considered as obiter. Moreover, it is not true that there is no provision of our law which -confers upon legitimated children the right to take the inheritance of their parents. Section 2173 of the Revised Statutes confers it upon them in express terms, as follows:
“They who are therein mentioned as being legitimated, can inherit both the estates of "their fathers and other relations.”
There is nothing in these statutes that would go to show that the lawmaker did not intend to use the word legitimate in its or■dinary sense, and that is to make legitimate, -or, in other words, to give the status of a ■child born in wedlock. Article 199, Civ. Code which provides that “Children legitimated by a subsequent marriage have the same rights as if they were born during marriage,” seems to make a distinction between legitimation by marriage and by notarial act; but it was written at a time when marriage was the only mode of legitimation; •and it has therefore to be read in the light -of that fact. When the subsequent laws were passed providing the other mode of legitimation, there was no intention of creating a different class of legitimated children, ■a class possessed of no greater rights than ■children merely acknowledged.
7. As to whether the intention of the deceased was to legitimate or merely acknowledge his children the acts are not as explicit as they might have been. The recitals ■of the acts are as follows:
The act of acknowledgment and legitimation :
“The said appearers declare that they do hereby and by these presents make acknowledgment of said children and do hereby legitimate them.
“They further declared that they desire and it is their wish that they inherit from them their property the same as if said illegitimate children had been born in lawful wedlock.
“That they do legitimate said children as is contemplated by article 203 of the Civil Code of 1900, of this State.”
Will written on same day:
“My name is John Junior Davenport. I have no no ascendants nor descendants. I have six children, which I have this day acknowledged by public act before Henry Mayer, notary public, and whose names are as follows: Bettie Davenport, Emma Davenport, wife of Charles Stansberry, John F. Davenport, Blanch Davenport, Henry Davenport, and James Davenport. I will and bequeath to my said children, share and share alike, one-fourth of' all the property that I may die possessed of, movable and immovable, real and personal. I appoint Thomas W. Tarleton and Charles Stansberry the executors of this my last will. I revoke and set aside all other wills made by me.”
Second will:
“My name is John J. Davenport. I have no living ascendants nor descendants, save and except six children, who I have legally acknowledged and legitimated whose names are as follows: Bettis Davenport, Emma Davenport, wife of Charles Stansbury, John F. ‘Davenport, Blanch M. Davenport, Henry N. Davenport, and James W. Davenport.
“I will and bequeath to each of my said duly acknowledged & legitimated children, share and share alike, all the property movable and immovable, real and personal, I may die possessed of.
“I appoint Thomas Wyatt Tarleton and Charles Stansbury executors of this my last will and testament, and I do hereby revoke and set aside all former wills made by me.”
We think that the result from these three documents is that the deceased intended to legitimate his children. Davenport certainly meant what the words “as if born in lawful wedlock” mean; and possibly did not know what article 202 of the Civil Code of 1900 meant. The parol evidence shows beyond question that such was the intention; but there is no need of going into it or of considering the question of whether or not it was admissible.
Judgment affirmed.