483 So.2d 662 (1986)
SUCCESSION OF Alvin Joseph GALWAY.
No. 85-CA-560.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
Rehearing Denied March 17, 1986.
*663 Sally A. Shushan, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for Ruth Julia Dudenhefer Galway, executrix, defendant-appellee.
Kendall R. Moses, Kenner, Perez & Roberts, Metairie, for Joseph David Galway, plaintiff-appellant.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
BOUTALL, Judge.
This case arises from a succession proceeding. An adopted son seeks to have the decedent's will declared invalid and to void the judgment of possession. From a judgment upholding the will and dismissing his claim, the plaintiff has appealed. We affirm.
The plaintiff is Joseph David Galway, whom Alvin Joseph Galway adopted during a marriage which ended in divorce. Alvin Galway executed a statutory will in which he attempted to disinherit the plaintiff and leave his entire estate to his wife, Ruth Julia Dudenhefer Galway, naming her the executrix. He died a year later. As the whereabouts of the son were unknown when the succession was opened, the court appointed a curator and rendered judgment recognizing the son as a forced heir and ordered that his one-third portion be placed in the registry of the court. Several years later the son learned of his father's death and filed suit to be declared Galway's sole legal heir.
John Galway alleges that the will was invalid because Guerdon A. Wallesverd, the notary before whom it was executed, was never a validly qualified and commissioned notary in Jefferson Parish. He later amended his petition to allege that:
"Petitioner further shows that if the said Wallesverd were ever commissioned as a Notary Public in this Parish and State, he was not a Notary Public on the date (December 20, 1977) of the execution of the purported last will and testament, his office as Notary having been forfeited, resigned and/or vacated by his voluntary actions and by operation of law."
In the plaintiff's trial brief he listed the following grounds for his allegation: that although Wallesverd had been commissioned in Jefferson Parish on October 21, 1963, he had failed to file a bond in the Clerk of Court's office in Jefferson until January 3, 1978; he had lived out of state between 1967 and the summer of 1977, owning property, being registered to vote, *664 and being a member of the bar in Wisconsin during part of that period; in 1977 he resided in Orleans Parish.
The case was heard, taken under advisement, and judgment rendered in favor of Ruth Galway and against Joseph Galway, dismissing all the plaintiff's demands. The trial judge furnished detailed reasons for judgment.
The five issues raised by the appellant may be summarized as follows: 1) whether at the time the will was executed Wallesverd was a notary dejure or de facto; and 2) whether the trial judge correctly disregarded evidence as to defects in the probate procedure and considered only the issues raised in the pleadings.
We consider first the second issue, as to the scope of the trial. The plaintiff attempted to introduce in oral argument several errors not enumerated in his petition, including failure of Wallesverd to date his affidavit attesting to the decedent's signature as required for probate of a statutory will in La.C.C.P. art. 2887, failure to provide two affidavits of death and heirship, failure to notarize the executrix's signature on the descriptive list, and failure to list homestead accounts.
La.C.C.P. art. 1154 allows a litigant with the court's consent to amend the pleadings to conform to evidence objected to on the ground that it is not within the issues made by the pleadings. The executrix maintained a continuing objection to all evidence attacking the probate procedure. The plaintiff admits that he did not request leave to amend when the executrix objected; however, he argues that he is protected by La.C.C.P. art. 862, which allows the court to grant the relief to which the party is entitled even though he has not demanded such relief. Further, the court had the duty to take cognizance of the record, which would have revealed the errors of which he complains. The appellant cites no authority for his position that a judge may or must base a judgment on issues not specified in the pleadings when they are apparent on the face of documents in the record. In Barker v. Loxco, Inc., 432 So.2d 975 (La.App. 1st Cir.1983), the court summarizes the law on the issue, as follows, at 976:
"Under LSA-C.C.P. art. 1154, proof beyond the pleadings, even if objected to, may be admitted and considered when permission to amend the pleadings is requested and granted. However, in the case at hand, counsel for the plaintiff did not request permission of the court to amend the pleadings to conform to the evidence he was attempting to introduce with respect to mental anguish. Amendments are freely allowed under LSA-C. C.P. 1154 when requested. Counsel for the plaintiff had every opportunity to request permission to amend his petition and failed to do so. Defendant's timely objections, coupled with the plaintiff's failure to move for an amendment of the pleadings is fatal to an issue not set forth in the pleadings. Guillory v. Buller, 398 So.2d 43 (La.App. 3rd Cir.1981); Wanda Petroleum Company v. Mac Drilling, Inc., 353 So.2d 474 (La.App. 3rd Cir.1977), writ denied, 355 So.2d 258 (La.1978)."
In the case before us, the trial judge ruled correctly, as the plaintiff admittedly failed to take advantage of La.C.C.P. art. 1154 and the executrix objected timely.
We now consider the primary issue, whether or not Wallesverd had either de jure or de facto status as notary public when the will was confected.
LSA-R.S. 35, Notaries Public and Commissioners, sets out the qualifications of notaries, including strict requirements for giving, recording, and renewing a bond and for obtaining a leave of absence from the position. (The period of absence may not exceed eight months. LSA-R.S. 35:131.) The statute indicates that failure to comply is just cause for revocation of a commission but not that revocation is automatic. The custodian must proceed against the noncompliant or absent notary in district court in accordance with sections 333 and 330. The statute does not indicate that acts performed by such notaries are void.
*665 To cover a situation in which an unknowing client uses the services of a notary whose qualifications are in some way defective, the courts have relied upon the de facto status. A de facto officer is "the individual who is in possession of an office and discharging its duties under color of authority derived from some sort of election or appointment, however irregular or informal, or at least from general reputation." De Facto Public Officers in Louisiana, 12 La.L.Rev. 200. There are three requirements: the office must be a de jure office; the person must be in actual physical possession of the office; and, most important to our case, he must have obtained that office under color of title. There are few Louisiana cases, none recent, interpreting the de facto doctrine. The doctrine was applied as early as 1848 in Citizens' Bank v. Bry, 3 La.Ann. 630 (La.1848) to uphold the validity of a "notarial protest" presented by a deputy notary. Later, in Monroe v. Liebman, 16 So. 734 (La.1895), where the notary had renewed his bond but failed to record it, the court held that he was both a de jure and de facto officer and that failure to file the bond does not vacate the office of notary but may be cause for suspension. He may continue in office as long as he renews his bond, unless he is suspended. Next came Davenport v. Davenport, 116 La. 1009, 41 So. 240 (1906), in which the principal notary of the parish had held office for 25 years, but had not filed a copy of his oath with the Secretary of State and Clerk of Court and had not at the time in question renewed his bond. The court held that he was clearly not a notary de jure when some questioned acts of legitimation were executed before him but that he was a notary de facto and the acts were valid. The court said, 41 So. at 240:
"... we think it would be an intolerable hardship to require every one who needs the services of a notary to ascertain first, under pain of nullity, whether he has or not filed his oath or bond with the Secretary of State, etc. If the notary is a notary de facto it is safe to have recourse to him...."
In Succession of Segura, 134 La. 84, 63 So. 640 (1913), another case in which an act of legitimation was challenged, the notary had complied with the requirements except for renewing his bond. He too was declared a notary de facto and the validity of the act passed before him was upheld.
The appellant argues that Wallesverd was neither de jure nor de facto, while the executrix insists that he was both. It is clear from the exhibits and from Mr. Wallesverd's telephone deposition that he was commissioned in 1963 but it is uncertain whether he filed a bond at that time. No record of one has been found. On October 13, 1977 he took out a bond of $1,000 (the amount required by statute when he was commissioned) that was back-dated to begin on July 9, 1964 but had no ending date; however, he did not file the bond in the office of the Clerk of Court until January 3, 1978. Also on October 13, 1977 he took out a second bond of $5,000 (the amount required in 1977), effective until October 13, 1982, which he filed on March 3, 1978. In 1977, when the will was executed, he was associated with another attorney and practiced in Gretna. To the best of his knowledge no action had ever been taken to suspend or revoke his notarial commission. In 1977 he believed himself to be a validly authorized notary public in Jefferson Parish and held himself out as such. As to his absence from the state, Wallesverd stated that he had resided in Florida from 1967 to 1969, when he moved to Wisconsin and practiced law there. He lived in New Orleans again from 1977 until 1980, when he returned to Wisconsin. Wallesverd clearly did not have de jure status at the time he acted as notary for the execution of the will.
We hold that the trial judge was correct in finding de facto status and upholding the validity of the testament. The appellant has presented no evidence to show that Wallesverd knew he was not in compliance with the statute, or that it was plain to the testator, Alvin Galway, that he was unqualified, or that the custodian of notarial records had filed notice of the expiration *666 date of the bond or lack of one or had ever filed suspension or revocation proceedings against Wallesverd. We agree with the court in Davenport v. Davenport, supra, that it would place an intolerable burden upon a client to require that he investigate and evaluate the credentials of a notary public before using his services.
Accordingly, for the reasons stated above, the judgment appealed from is affirmed. John Galway is entitled to pursue his claim for an accounting and payment of his legitime.
AFFIRMED.