715 So.2d 672 (1998)
SUCCESSION OF Woodrow W. WAFER.
No. 30259-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*673 Bobby L. Culpepper & Associates by Bobby L. Culpepper, Monroe, for Appellants Opal Wafer, Betty Lou Wafer Collinsworth, and Priscilla Wafer Hood.
Goff, Caskey, Davis & Fallin by H. Russell Davis, Arcadia, for Appellee Rebecca W. Jemmerson.
Before HIGHTOWER, BROWN and CARAWAY, JJ.
HIGHTOWER, Judge.
After the trial judge invalidated the will of Woodrow W. Wafer for nonadherence to statutory formalities and voided an earlier judgment of possession, the decedent's widow and two of his daughters appeal. We reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
Wafer, a domiciliary of Bienville Parish, died on July 22, 1993. Intending to comply with La. R.S. 9:2442, he had executed a statutory will on September 18, 1990. The district court probated that document on July 29, 1993, issuing Letters Testamentary to the decedent's widow, Opal F. Wafer, named as executrix and sole legatee.
On January 28, 1994, the court granted a Judgment of Possession in favor of Mrs. Wafer. Several months later, she petitioned for a declaratory judgment that two of the couple's four children had no interest in the succession and would be required to collate certain property. Those two heirs, Woody F. Wafer and Rebecca Wafer Jemmerson, responded with a petition to annul the testament and amend the judgment of possession. That pleading alleged the nullity of the will due to the notary public's lack of a commission for Bienville Parish, where the testament had been executed. Almost two years later, Jemmerson[1] amended her petition to further allege that "[t]he will was not executed in accordance with the provisions of La. R.S. 9:2442."
After determining at trial that the notary lacked authority to act at the locus, and also in reliance upon testimony from one of the attesting witnesses that he had not seen Wafer sign the will, the district court invalidated the testament and nullified the earlier judgment of possession. Mrs. Wafer and her two daughters then sought a new trial, alleging new evidence and contending they received insufficient notice of Jemmerson's claims. Specifically, they sought to clarify the attesting witness's earlier testimony and to present the other attesting witness. Despite hearing statements from both of these witnesses, the district judge denied a new trial. This appeal ensued.

DISCUSSION
Having filed her claim to annul more than three months after probate of the will, Jemmerson had the burden of proving the invalidity of the will, which is presumed valid; and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. La. C.C.P. art. 2932; Succession of Harvey, 573 So.2d 1304 (La. App. 2d Cir.1991), and authorities therein. We thus conclude that, in deciding Jemmerson sustained that burden, the district court manifestly erred.
The prescribed method for executing a statutory will is found in La. R.S. 9:2442, delineating in relevant part that the will be prepared in writing, and dated and signed in the presence of a notary and two competent witnesses. The authenticity of this type of testament is proved by testimony from the notary and one of the subscribing witnesses, or from two of these witnesses, that it was signed by the testator. La. C.C.P. art. 2887.
Regarding the qualifications of the notary before whom the Wafer will was executed in Bienville Parish, the record shows Pearlie Andrews to have been duly commissioned in Natchitoches Parish. See La. R.S. 35:191. In Bienville Parish, however, she did not have the requisites of a de jure notary, i.e., *674 one who is qualified and appointed in total compliance with the law governing her position. Even so, we deem Andrews to have been a de facto notary, a notary in fact.
In granting validity to the acts of such officials in general, the courts have imposed three requirements. See generally, Henry J. Dauterive, Jr., Comment, De Facto Public Officers in Louisiana, 12 La. L. Re 200 (1952). The office involved must exist as a de jure office, the holder must have attained that office under some color of title, and he or she must be in actual physical possession of the office. Davenport v. Davenport, 116 La. 1009, 41 So. 240 (1906); Succession of Segura, 134 La. 84, 63 So. 640 (1913); Succession of Galway, 483 So.2d 662 (La.App. 5th Cir.1986).
In the present case, given that the office of Notary Public exists by statute, the first requirement is clearly met. Cf. Davenport, supra. Further, in executing and notarizing the will according to statutory guidelines, Andrews also satisfied the physical possession condition, namely a good faith exercise of the functions and duties of the office.
The final requisite is that the person hold the office under some color of title, that is, by virtue of "`some sort of election or appointment, however irregular or informal, or at least from general reputation.'" Succession of Galway, supra, at 665 (quoting from Dauterive, De Facto Public Officers, supra). Testimony in the record reflects that Andrews notarized documents in Bienville Parish on at least one earlier occasion, that Mrs. Wafer had no question as to the notary's authority to act in reference to the document at hand, and that both the Wafers and the Hennigan couple[2] sought her notary services for the execution of four wills at this same time and location.
Granted, the trial court felt that the reference to Natchitoches Parish on the notary's seal "should have put the parties, the Wafers, on some notice that they were using a Notary from another parish [bringing] up some question that should have been explored." We cannot agree, however.
Apparently, the Wafers and Hennigans remained unaware of the indistinct impression made by the seal. Beyond that, even had they been extremely observant, it is doubtful that the words "Natchtitoches Parish" would serve to place most laymen on notice of a deficiency, especially in light of statutory authority that now permits a validly appointed notary in one parish to "exercise any and all of the functions of a notary public in an adjacent parish" under certain conditions, and providing similar reciprocal arrangements for numerous parishes. See La. R.S. 35:191. These expansions of notarial commissions beyond parish lines, without the historical protocols once necessary, understandably demonstrate a more tolerant trend in addressing geographic formalities.
When combined with the unique locale,[3] the fact of Andrews's address being listed in Saline, the short distance from her office in Natchitoches Parish to the site in question, and the rurality of the area, the disclosed circumstances amply illustrate the good faith and reasonableness of the parties' belief that the notary's commission extended to the Wafer store, thus according her de facto status. Within the contours of that legal standing, the law accepts Andrews's actions as valid. Cf. Davenport, supra; Succession of Galway, supra.
We likewise find error in the trial court determination regarding the subscribing witness. While denying that he observed Wafer sign the will, Steve Coleman admitted his presence in the store during the execution, recited the names of those present with him on that date, recalled and admitted that he signed the document, and eventually changed his testimony at the hearing on the motion for new trial.
*675 The facts before us are very similar to those in Succession of Thibodeaux, 527 So.2d 559 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 151 (La.1988). There, a subscribing witness testified she did not see the testator sign the document, although present during its execution. Based upon the witness's contrary assertions in an affidavit filed with the petition to probate, the will's attestation clause, and the overall testimony of other witnesses, the court upheld the validity of the Thibodeaux will.
Similarly in the case sub judice, the affidavit filed with the petition to probate indicates that Coleman signed the will as a subscribing witness in accordance with the attestation clause of the will itself. The notary testified that, although she did not remember the exact location of the witnesses, she followed her normal procedure of observing the testator and witnesses sign the will before she signed and sealed the document. The second subscribing witness, Doris Hennigan, testified that Coleman was present at the execution of the will, although she could not state whether he actually observed Wafer sign the document.[4] Thus, Coleman's trial testimony is contradicted by both his earlier affidavit and the testament itself, and also challenged by testimony from the other witness. Importantly too, neither the authenticity of the testament nor the testator's intent has been disputed. Under these circumstances, invalidation of the testament based upon rigid and exacting demands of form would sacrifice reasonableness for excessive technicality. Cf. Succession of Byrd, 419 So.2d 100 (La. App. 2d Cir.1982), writ denied, 422 So.2d 155 (La.1982).
The purpose underlying statutory formality is to guard against mistake, undue influence, fraud or deception, and to afford the means for determining the authenticity of a will. Lee v. Kincaid, 359 So.2d 232 (La. App. 2d Cir.1978), writ denied, 360 So.2d 198 (La.1978); Succession of Michie, 183 So.2d 436 (La.App. 2d Cir.1966), writ denied, 249 La. 118, 185 So.2d 529 (1966). When such mischiefs are not presented in a will challenge, however, a finding of substantial compliance with La. R.S. 9:2442 is favored. Succession of Babin, 215 So.2d 649 (La.App. 1st Cir.1968); see also Stephens v. Adger, 227 La. 387, 79 So.2d 491 (1955). In light of these principles, including the presumed validity of the will, the record in this case discloses such substantial compliance. Accordingly, we reverse the trial court's contrary determination.

CONCLUSION
Finding the notary who executed the testament to have been a de facto notary and that substantial statutory compliance transpired, we reverse the trial court decree annulling the testament of Woodrow Wafer, reinstate the judgment of possession in favor of Opal Wafer, and remand for further proceedings consistent with this disposition. Costs of this appeal are assessed to Jemmerson.
REVERSED AND REMANDED.
NOTES
[1] Following Woody F. Wafer's dismissal from the proceedings with prejudice on August 8, 1996, Jemmerson remained as the only plaintiff. Mrs. Wafer and her other two daughters continued to be defendants.
[2] Doris Hennigan, one of the attesting witnesses to the Woodrow Wafer testament, testified that she, her husband, and Woodrow and Opal Wafer executed their four wills in the Wafer store before Pearlie Andrews.
[3] According to the affidavit filed with the probate petition, execution of the will occurred in Saline, Bienville Parish, Louisiana. General maps show that Saline is situated slightly more than one mile from the parish line of Natchitoches Parish.
[4] At the new trial hearing, Hennigan testified that she witnessed the signature of the testator. Thus, her statement, along with the testimony of the de facto notary, would suffice to prove the will independently of Coleman's testimony. See La. C.C.P. art. 2887.