|, CARAWAY, J.
Following our ruling in Succession of Sampognaro, 38,112 (La.App.2d Cir.1/28/04), 865 So.2d 307 (“Sampognaro I ”), the trial court determined that despite the irregularity in the decedent’s will, the notarial act was conducted in accordance with the formalities of the law and the *705 validity of the will was upheld. Nevertheless, in the course of the trial of the matter, the evidence revealed that the notary who notarized the will was a disbarred lawyer who acted in violation of La. R.S. 35:14. Appellant, therefore, appeals the trial court’s ruling and contests the will due to the notary’s disqualification under the statute. Finding that Louisiana’s doctrine for de facto officials is applicable, we affirm the trial court’s ruling.

Facts

Patricia Williams Sampognaro died on December 18, 2002. Shortly before her death, on December 2, 2002, she executed a notarial testament pursuant to La. C.C. art. 1577, naming her son, Thomas Craig Sampognaro, as universal legatee. Mrs. Sampognaro’s earlier will,- dated November 6, 2002, bequeathed her estate to all four of her children, equally. The November will was offered for probate on January 10, 2003. A few days later, Thomas Craig Sampognaro challenged the proceedings, and offered the December will for probate. After a contradictory hearing, the trial court invalidated the December will because the witnesses’ and notary’s signatures were misplaced on the will form above the attestation clause. The judgment was appealed to this court. In Sampognaro I, this court reversed that judgment and.remanded the case for an evidentiary hearing to 12resolve any uncertainty or doubt about the observance of statutory formalities in connection with the execution of the will.
At the hearing on remand, Gilmer P. Hingle, the notary public before whom the December will was passed, testified concerning the circumstances surrounding the execution of the will. Hingle testified that he was a notary public, admitted on September 28, 1999, and offered his oath of office, certificate and a copy of his notarial bond into evidence. He testified that Mrs. Sampognaro was formerly his -neighbor •and that he previously represented her as an attorney in the 1980’s. Hingle drafted the will at her son’s request and arranged for an office employee to accompany him to the nursing home where Mrs. Sampog-naro resided, Hingle testified that Mrs. Sampognaro was awake and used her glasses when reading and signing the will. On cross examination, Hingle testified that he, was no longer an attorney, having been disbarred in 1998 by the Supreme Court. In re Hingle, 98-774 (La.9/18/98), 717 So.2d 636.
In addition to Hingle’s testimony, Christie DeShayzo and Steve Lambert, the two witnesses to the December will, also testified at the hearing. ’ They confirmed that the will was executed by Mrs. Sam-pognaro in their presence and that she declared the instrument to be her will.
After the hearing, the trial court rendered judgment in favor of the appellee, Thomas Craig Sampognaro, upholding the December will and appointing Thomas Craig Sampognaro as the sole testamentary executor of the succession. The judgment also nullified the November will.
|8In the oral reasons for judgment, the trial court stated that it interpreted our prior ruling to require a determination that the witnesses and notary were present when Mrs. Sampognaro signed the will and acknowledged it as her own. The court found that the execution of the will had occurred in the presence of the witnesses and notary *and noted that the parties had stipulated that no undue influence had caused Mrs. Sampognaro to act. Regarding Hingle’s authority as a notary, the court indicated that the issue should have been raised earlier and that res judicata barred its consideration.

Discussion

Despite the fact that the signatures of the notary and the two witnesses were *706 above the attestation clause of the will, this court in Sampognaro I found that such irregularity did not automatically invalidate the will. We remanded the case, however, to allow for an evidentiary hearing to contest whether the substantive acts declared in the attestation clause did actually occur. The attestation clause under La. C.C. art. 1577 requires signification (i) that the testatrix declared the instrument to be her will in their presence, (ii) that the testatrix signed the instrument in their presence, and (iii) that they in turn signed in the presence of the testatrix and each other. At the trial of the matter after remand, these facts were determined to have occurred and are not disputed in this appeal. Nevertheless, incidental to that inquiry, Hingle admitted that he was a disbarred lawyer. Based on this fact and pursuant to La. R.S. 35:14, appellants challenge in this appeal the trial court’s recognition of the will Lbecause of the existence of the statutory prohibition of Hingle’s eligibility to act as a notary.
La. R.S. 35:14 provides in pertinent part as follows:
Any attorney at law, or person who was an attorney at law, who is disbarred or suspended from the practice of law due to charges filed by the Committee on Professional Responsibility of the Louisiana State Bar Association or who has consented to disbarment shall not be qualified or eligible nor shall he exercise any functions as a notary public in any parish of the state of Louisiana as long as he remains disbarred or suspended from the practice of law in Louisiana.
The Louisiana Supreme Court, which has exclusive authority over the regulation of attorney misconduct in this state, has agreed that suspension or disbarment from the practice of law includes the prohibition from exercising notarial functions and has recognized the statute’s application. In re Juakali, 03-143 (La.9/5/03), 854 So.2d 307; In re Ellis, 99-2483 (La.9/15/99), 742 So.2d 869. The court in Ellis indicated that a suspended attorney’s conduct as a notary would mislead the public into believing the attorney was in good standing to practice law in this state.
From a review of the wording of the statute and the Supreme Court’s application of its prohibition in disbarment proceedings, we initially make two observations. First, the statute does not speak directly to the question presented in this case. It does not expressly say that a notarial act performed by a disbarred lawyer is a nullity. Second, the purpose of the statute is to prevent harm to the innocent public in dealing with an apparent attorney who has nevertheless been suspended or disbarred. To the contrary, appellant’s argument for nullification of the will would thwart the donative intent of Mrs. Sampognaro and harm the interests of her intended 15legatee. From these observations, we believe that application of Louisiana’s jurisprudence concerning the acts of de facto officials is appropriate for the resolution of this dispute.
“An officer de facto is one who exercises the duties of an office under color of appointment or election to that office, or who has the reputation of being the officer he assumes to be. He differs on the one hand from a mere usurper of an office who undertakes to act as an officer without color or right, and on the other from an officer de jure who is, in all respects, legally appointed and qualified to exercise the office.” City of Baton Rouge v. Cooley, 418 So.2d 1321, 1324 (La.1982), quoting State v. Sadler, 51 La. Ann. 1397, 26 So. 390 (1899). The Louisiana Supreme Court has held that until a de facto officer’s title to the office is attacked directly and held to be invalid, “the acts of a de facto official are as valid and effectual, *707 when they concern the public or the rights of third parties, as though he were an officer de jure.” State v. O’Reilly, 00-2864, 00-2865 (La.5/15/01), 785 So.2d 768, 777, citing State v. Stripling, 354 So.2d 1297 (La.1978).
In granting validity to the acts of such de facto officials in general, the courts have imposed three requirements. See generally, Henry J. Dauterive, Jr., Comment, De Facto Public Officers in Louisiana, 12 La.L.Rev. 200 (1952). The office involved must exist as a de jure office, the holder must have attained that office under some color of title, and he or she must be in actual physical possession of the office. Succession of Wafer, 30,259 (La.App.2d Cir.6/24/98), 715 So.2d 672.
|rJn Davenport v. Davenport, 116 La. 1009, 41 So. 240 (1906), the decedent’s act of legitimation of his children and his wills were attacked because the principal notary of the parish had failed to file a copy of his oath in the offices of the secretary of state and the clerk of court. He also had neglected to renew his notary bond. The court concluded that he was therefore not a notary de jure at the time of the disputed acts. Yet, he was a notary de facto and the acts were upheld. The court said:
We think it would be an intolerable hardship to require everyone who needs the services of a notary to ascertain first, under pain of nullity, whether he has or not filed his oath or bond with the Secretary of State, etc. If the notary is a notary de facto, it is safe to have recourse to him. The adoption of the doctrine of officers de facto was forced upon the courts by just such a situation as that presented in this case.
Id. at 240.
More recently, in Succession of Wafer, supra, a Natchitoches Parish notary attempted to notarize a will in Bienville Parish, to which the notary’s commission did not extend geographically. When the trial court nullified the will because of the notary’s disqualification, we reversed the ruling applying the de facto notary doctrine. Notably, we disagreed with the trial court’s view that the Natchitoches Parish notary seal on the instrument should have provided notice. The good faith exercise of the notary function by the de facto notary under color of authority created a reasonable reliance by the testator upon the public official.
In this case, following his disbarment in 1998, Hingle applied to become a notary in Ouachita Parish and received a notary’s commission signed by the secretary of state and governor on September 28, 1999. HisJjtestimony indicated that he believed he was qualified to act as a notary. There was no testimony indicating that Mrs. Sampognaro understood in December 2002 that Hingle was unqualified to act as notary for the execution of her will. Hingle testified that Mrs. Sampogna-ro, as his former client, probably received notice of his disbarment in 1998. Nevertheless, we do not find that the possibility of her knowledge of his prior disbarment would prevent her from relying on his actions as the notary in this case.
Accordingly, we find that Hingle acted as a de facto notary in this instance and that the decedent’s will, which was shown to have been executed with the formalities required by our law, was appropriately recognized by the trial court.[1] The trial *708 court’s judgment is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
STEWART, J., concurs with written reasons.

. Our determination that Hingle acted as a de facto notary, of course, requires his cessation of such practices in the future. Pursuant to Canon 3 B(3) of the Code of Judicial Conduct, this court has taken the appropriate action to notify the Office of Disciplinary Counsel and the Louisiana Secretary of State of Hingle’s actions.