WARNER, J,
dissenting.
I would grant the petition, as I conclude that the harm alleged is not remediable on appeal, and therefore irreparable, and departs from the essential requirements of law. ■ The trial court did not follow Target Corporation v. Vogel, 41 So.3d 962 (Fla. 4th DCA 2010); or exercise judicial discretion in this case but entered the order as a matter of policy based upon prior similar rulings the court had made in other cases and not on the record in this case.
McClure slipped and fell in a Publix grocery store. Store security cameras recorded the fall. After filing suit for her injuries, McClure filed a request for production of the video. Publix did not respond to the request, and McClure filed a motion to compel. At the hearing on the motion to compel, Publix contended that it *1000 was entitled to take McClure’s deposition prior to her being able to see the video so that Publix could obtain McClure’s version of the incident unaided by her review of the actual video of it. McClure relied on Target, while Publix relied on Dodson v. Persell, 890 So.2d 704 (Fla.1980). No facts involving this case were elicited at the hearing. The trial court determined that it. would rule consistent with its ruling in other cases that the video did not have to be produced until after the deposition. McClure now petitions for review of this order.
As noted by McClure, she will be deprived of relief by way of direct appeal, because an appeal cannot undo her deposition answers if the deposition is taken prior to viewing the store security video. These answers can be used to attack her credibility at trial thus creating harm at trial of this matter. This harm cannot be corrected by way of an appeal at the end of the proceeding. See Bared & Co., Inc. v. McGuire, 670 So.2d 153, 156-57 (Fla. 4th DCA 1996). The court in Boucher v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1957), explained such harm in connection with an order compelling a plaintiff to answer interrogatories:
“If plaintiff is wrongfully required to answer defendant’s interrogatories, she is beyond relief. We conceive no means by which on appeal this court could extract such knowledge, once gained, from the mind of the defendant, for truly ‘the moving finger having writ moves on nor any appeal shall lure it back to cancel half a line.’ ”[1]
101 So.2d at 410. Although Boucher involved divulging privileged material, the principle is the same with respect to the irreparable nature of an order which requires the party to answer deposition questions prior to viewing the video, which is the substantive, objective evidence of what occurred during the incident. I suppose that McClure could simply answer questions regarding the incident by deferring to the video as to what occurred, and she well might do so with good reason depending upon her condition and extent of her injuries at the time of the accident. But that would have the same effect as not having her testify as to the facts of the incident until after the production of the video. Those answers would be used against her at trial to attack her credibility and veracity.
In any event, the issue is not remediable on appeal. With the proliferation of security video across this country, this presents an issue which will continually recur and should be addressed in an orderly fashion instead of allowing each trial court to render a ruling in accordance with its “policy” and not on the particular facts of any case. Thus, the issue is capable of repetition many times, yet evading review.
The main issue presented in this case is whether the trial court’s order requiring the plaintiffs deposition prior to the production of the video is a departure from the essential requirements of law. Florida Rule of Civil Procedure 1.280(e) provides for the sequence and timing of discovery:
unless the court upon motion for the convenience of parties and witnesses and in the interest of justice orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not delay any other party’s discovery.
*1001 Thus, although the timing of discovery is within the trial court’s discretion, that discretion must be exercised for the convenience of the parties or the interests of justice. Otherwise, a party may not delay discovery simply because it is engaging in discovery itself. But even in “the interests of justice” the trial court exercises judicial discretion.
Judicial discretion is not an unleashed power by which a judge may set at naught the rights of parties to a cause and define them as suits his will or the will of others who may seek to influence his judgment. Judicial discretion is a discretion guarded by the legal and moral conventions that mold the acceptable concept of right and justice. If this is not true, then judicial discretion, like equity, will depend on the length of the judge’s foot, the state of his temper, the intensity of his prejudice, or perhaps his zeal to reward or punish a litigant. It takes more than a woolsack and a judicial robe to dehumanize human characteristics that are rehumanized each biennium.
Albert v. Miami Transit Co,, 154 Fla. 186, 17 So.2d 89, 90 (1944). A trial court must exercise that discretion by considering the individual facts and circumstances of each case. See Matire v. State, 232 So.2d 209, 211 (Fla. 4th DCA 1970). To the extent that the trial court had discretion regarding the timing of the discovery and production of the video to the plaintiff, the court did not exercise discretion based upon the record but rather repeated a policy the court had adopted in other cases. Because that discretion was not exercised based upon the facts and circumstances of this case, it was a departure from the essential requirements of law.
The court’s order departs from the holding of Target Corporation v. Vogel, 41 So.3d 962 (Fla. 4th DCA 2010). In Target, we held that a security video was not work product. Therefore, it was discoverable under the rules of procedure, which are designed “to prevent the use of surprise, trickery, bluff and legal gymnastics.” Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 111 (Fla.1970). We denied Target’s petition for certiorari review, upholding the trial court’s order allowing discovery of the video by the plaintiff prior to her deposition being taken.
Target distinguished Dodson v. Persell, 390 So.2d 704 (Fla.1980), on which Publix relies, noting that Dodson dealt with a surveillance video made after the accident and during litigation- between the parties, thus clearly constituting work product.[2] Dodson required the production of surveillance films made of a plaintiff after an accident but permitted the defendant to take the- deposition of the plaintiff prior to production of the film, in the discretion of the trial court, so as to divulge any inconsistency between the plaintiffs claims of injury and what the surveillance film revealed as -to plaintiffs physical capabilities. Thus, Dodson dealt with work product and its use for impeachment of the plaintiff on damage issues. Target, on the other hand, properly treated the security camera issue as involving ordinary discovery requests and not any protected work product.
The Target view has been adopted by other courts across the country. In Herrick v. Wilson, 429 N.J.Super. 402, 59 A.3d *1002 604 (2011), the court held that a security video had to be produced in the normal course of discovery and could not await the deposition of the plaintiff. It found that there was a fundamental difference between a surveillance video taken of the plaintiff after litigation had commenced and a security video. It explained why a requirement that the plaintiffs deposition precede the discovery of a security video would lead to increased discovery battles and be counterproductive to the rules of procedure:
The Court Rules do not allow parties to unilaterally pick and choose which discovery they will produce and in what order. A contrary interpretation would allow parties to manipulate the discovery process by withholding certain discovery' in an effort to obtain a strategic advantage in the litigation.... To allow defendant to withhold this discovery would fundamentally change how pretrial discovery is conducted and allow parties to delay production of certain discovery to gain an upper hand in the litigation. There is simply no sound reason to treat the video surveillance at issue differently from other routine discovery such as prior statements or admissions made by a party. If defendant is permitted to withhold the video surveillance, it would open the floodgates of motion practice. Parties would begin to routinely refuse to.produce all evidence that would be more beneficial to produce after depositions are conducted.
[[Image here]]
Defendant has expressed concerns that if the video surveillance in question is produced prior to plaintiffs’ deposition, then plaintiffs’ unfettered, independent recollection will “be forever tainted.” This argument is not without merit. Nevertheless, the same argument could be advanced with respect to a practically limitless list of frequently produced discovery, including, but not limited to, police reports, witness statements, party admissions, emails, and photographs.... Allowing defendant to withhold the video surveillance until after plaintiffs’ depositions would lead to a slippery slope where, potentially, all discovery could be withheld out of concern that the information/material may influence or alter a party’s deposition testimony.
Id. at 606-07. See also Race v. Wal-Mart Stores, Inc., 2012 WL 6743576 (Conn.Super.Ct. Nov. 29, 2012); Dehart v. Wah-Mart Stores, E., L.P., 2006 WL 83405 (W.D.Va. Jan. 6, 2006).
This issue has been litigated in various circuit and federal courts in Florida. In Parks v. NCL (Bahamas) Ltd., 285 F.R.D. 674 (S.D.Fla.2012), a federal magistrate ruled that the defendants did not have to produce security video surveillance until after taking the plaintiffs deposition, so as to have plaintiff testify to her unrefreshed version of the incident. But in Schulte v. NCL (Bahamas) Ltd., 2011 WL 256542 (S.D.Fla.2011), the court rejected such a requirement, because it found nothing in the record to suggest that the plaintiff would tailor her testimony as a result of viewing the videotape prior to her deposition.
In Muzaffarr v. Ross Dress for Less, Inc., 941 F.Supp.2d 1373, (S.D.Fla. Apr. 25, 2013), the court sided with the analysis in Schulte in requiring production of the video prior to the plaintiffs deposition. It catalogued a considerable number of Florida circuit court cases which rejected delaying the production of security surveillance until after the plaintiffs deposition.[3] It appears that in Florida the vast weight of authority rejects the withholding of securi *1003 ty video until after the plaintiffs deposition is taken, unless specific factual circumstances in a particular case provide for a contrary result.
The video reflects the actual occurrence of the accident. Viewing the video prior to the plaintiffs deposition may not only promote truth-seeking but foster settlement in cases of disputed liability. On the other hand, to withhold the video, as with withholding of any other witness statement or photographs, would only result in the type of surprise and trickery that the rules of civil procedure were designed to eliminate. See Surf Drugs, 236 So.2d at 111.
In this case, even though presented with Target, the trial court did not follow it but ruled as it had in prior cases to allow the deposition to precede the delivery of the security video. The trial court did not exercise its discretion with respect to the facts and circumstances of this case. No evidence in the record supports the contention that McClure would present fraudulent testimony were she allowed to view the security video prior to her deposition. Thus, the trial court did not properly exercise its discretion in this case and departed from the essential requirements of law. I would grant the petition for certiorari.

. The Supreme Court appears to have been paraphrasing stanza 71 of the Rubaiyat of Omar Khayyam, written in the 12th century and translated by Edward FitzGerald in 1859. The Norton Anthology of English Literature 1509, 1516 (3rd Ed. 1974).

. This issue does not involve the claim of a privilege as to work product. The store security tape in this case is not work product. Work product involves materials prepared in anticipation of litigation. Fla. R. Civ. P. 1.280(b)(4); Publix Supermarkets, Inc. v. Johnson, 959 So.2d 1274, 1274 (Fla. 4th DCA 2007). Publix did not argue that the store security video was work product, nor did they file a privilege log to assert any work product privilege. Fla. R. Civ. P. 1.280(b)(6).

. "The Plaintiff cites a string of Florida Circuit court rulings compelling the production *1003 of surveillance video in advance of a Plaintiff's deposition. Mimms-Baker v. Publix Supermarkets, Inc., No. 2011-CA-4826-11-W (Fla. 18th Cir. Sept. 20, 2012) (Because video is not work product, no reason to withhold production until after the deposition of Plaintiff if when a proper request to produce was made); Keene v. Winn Dixie Stores, Inc., No. 16-2011-CA-1673 (Fla. 4th Cir. May 13, 2011) (Video footage of accident is not protected by any privilege and is discoverable prior to the Plaintiff's deposition). The court acknowledged the potential for a litigant to tailor their deposition testimony so that it is more consistent with the evidence gathered through discovery, but found that the interests of justice are better served by early disclosure of relevant evidence. Taking the Plaintiff's deposition before or after disclosure will not change the content of the videotape, which will either demonstrate that a Plaintiff's claim is fraudulent or will not. The court also distinguished between in-store video surveillance and post-suit surveillance of a Plaintiff); Clarke v. Winn Dixie Stores, Inc., 11-41678-CA-20 (Fla. 11th Cir. June 20, 2012); Howard v. Publix Supermarkets, Inc., 10-027941-09 (Fla. 17th Cir. Oct. 25, 2010); Rex v. Publix Supermarkets, Inc., 56-2010-CA-000161 (Fla. 19th Cir. February 4, 2011); Smith v. Publix Supermarkets, 31-2010-CA-075421 (Fla. 19th Cir. April 29, 2011); Hendricks v. Winn Dixie Stores, Inc., 2012-CA-002447 (Fla. 4th Cir. July 9, 2012) (granting Plaintiff's motion to compel, but without prejudice, and pending further discovery so that Defendant could move for reconsideration at a later date if it could show that disclosure of the video would lead Plaintiff to improperly tailor or fabricate her testimony); Tucker v. Winn Dixie Stores, 12-006369-05 (Fla. 17th Cir. June 28, 2012); Murray v. Publix Supermarkets, 12-02143-05 (Fla. 17th Cir. June 18, 2012); Falkowitz v. Publix Supermarkets, Inc., 11-800637-25 (Fla. 17th Cir. April 10, 2012); Hetherington v. Publix Supermarkets, Inc., 09-019796-CI-021 (Fla. 6th Cir. July 20, 2010); Hudnall v. Food Lion, LLC, 11-CA-10328 (Fla. 4th Cir. Mar. 30, 2012); Puentes v. Denny’s, 2011-31613-CA-01(32) (Fla. 11th Cir. Jan. 19, 2012); George v. Publix Supermarkets, Inc., 16-2010-CA-8910 (Fla. 4th Cir. Oct. 11, 2010) (distinguishing between surveillance video which captures an incident at the time it occurs from a surveillance video capturing a Plaintiff when he or she is actively pursuing a claim for monetary damages resulting from an incident that has already taken place); Williams v. Publix Supermarkets, Inc., 2010-CA027757 (Fla. 15th Cir. Jan. 25, 2011). In the case of Karabachi v. Winn Dixie Stores, Inc., 2010 CA 015902 AF (Fla. 15th Cir. Dec. 12, 2012), the court reversed an order permitting the Defendant to take the Plaintiff's direct testimony in deposition prior to producing the video surveillance after it was disclosed that the Defendant’s employees had viewed the video before testifying.” Muzaffarr, 2013 WL 1776656 at *1.